## MINKLAER *against* ROCKFELLER and FELLER.

*An action will not lie against overseers of the poor, for omitting to apply to a justice, to obtain an order for the relief of a pauper settled in their town, at the suit of one who, after giving them notice, and requiring them to provide for the pauper, supports him at his own expense, voluntarily, and without request from the overseers of the poor.*

*The appropriate remedy is by mandamus, in behalf of the pauper, to compel the overseers to apply to a justice, and cause the case to be considered.*

*Semble, that, if an action would lie, it must be in the name of the pauper.*

ON error from the C. P. of *Columbia.*  *Minklaer* sued *R. & F.* before a justice, in case, for neglect of duty as overseers of the poor of the town of *Clermont*, in not providing for *John M' Gill* and his wife, two paupers belonging to that town. The cause went to the C. P. by appeal; who non-suited the plaintiff upon the following proof:

On the 25*th* of *January*, 1823, the plaintiff served a written notice, signed by himself, on the defendants, that *John M' Gill* and his wife were at his house, wholly unable to provide for and maintain themselves; and requiring the defendants to make provision for them. The defendants said they could do nothing about it till they saw Mr. *Edward P. Livingston.* They admitted that they were then, and still continued to be, at the time of the trial in the C. P., overseers of the poor of the town of *Clermont;* and that *M' Gill* and his wife were legally settled in the town. They were poor and helpless. The plaintiff had supported the paupers for a considerable time after the notice, and had incurred trouble and expense on their account. Farther particulars will be found stated in the opinion of the court.

To the opinion of the C. P., non-suiting the plaintiff, he excepted.

*K. Miller*, for the plaintiff in error. The defendants had omitted to perform a known official duty; and were therefore liable to a special action on the case. They

In an action against public officers for a non-feasance, the plaintiff must shew the neglect of duty, by proof on his part; and if an action would lie against overseers of the poor, for not taking the proper steps to obtain an order for the relief of a pauper, the *onus* of showing the neglect lies with the plaintiff. It is not enough that he shows it to be their duty; but he must show the negative, that they did not do their duty.

were under both a legal and moral obligation to support the paupers. It was their duty to inquire into the matter, and furnish relief, according to the statute, ( 1 *R. L.* 287, 8, *s.* 25.) This was held in *King* v. *Butler*, (15 *John.* 281-2.) The statute requires that, when application is made to the overseers, they shall make application to a justice, and with him inquire into the state and circumstances of the pauper ; and the justice is to make an order for relief, if it shall appear to be necessary. The case cited, holds that this application for an order is merely to protect or indemnify the overseer against the advance of money for relief. *Platt*, J. in *Olney* v. *Wickes*, (18 *John.* 126,) entertains this view of it.

An action is the only possible remedy which the plaintiff can have for the injury. A motion might, in the first instance, have been made for a mandamus ; but that will not now reach the injury which has happened. He could not go to the sessions by appeal, because the overseers refused to apply for the order of a magistrate. Without his application, no order could be made, one way or the other. A mandamus could not have been obtained till the term next after notice to the defendants ; and we should, of necessity, have been put to this remedy for our damages in the mean time.

*J. W. Wheeler*, contra. This case does not come within the authorities, or the principle relied on. Overseers have never been holden liable without an express promise, or an order of a magistrate previously obtained. Till one or the other takes place, there is no legal duty for the overseer to perform. No action lies, therefore, either at the common law, or upon the statute. Is it to be tolerated, that persons holding the office of overseer of the poor, shall be bound to accept a pauper upon the complaint of any one who may choose to interfere ; and that too, upon the penalty of answering to him in a suit, the sums he may think proper to expend for maintenance, in case of refusal ? The plaintiff had no rights. But if his right was per-

UTICA,
Aug. 1826
Minklaer
v.
Rockfeller.

fect, the proof of misconduct was altogether deficient. It is not enough to shew a mere omission of duty. It should be accompanied with an intention to harrass and vex the plaintiff. (*Rogers* v. *Brewster*, 5 *John.* 125.) Malice or corruption should have been shown. (*Jenkins* v. *Waldron*, 11 *John. Rep.* 114.) The statute points out the duty of the overseer; but gives no remedy. The only remedy is by mandamus; or in case of a corrupt refusal, an indictment. Overseers are a *quasi* corporation. (*Todd* v. *Birdsall*, 1 *Cowen*, 260.) As such, they are not liable, except where the statute has made them so. They cannot act independent of the magistrate; and whether they will act with him, is a matter in their discretion. It would be singular, that they should be made liable for a mere error in judgment. (*Seaman* v. *Patten*, 2 *Caines*, 312. *Harman* v. *Tappenden*, 1 *East*, 561.)

*Miller*, in reply, denied that overseers have a discretion upon the question of acting. The statute is peremptory that they shall apply to a magistrate. So far their duty is ministerial. The judgment which they give with the magistrate, is another consideration. The cases cited against the plaintiff are of officers having discretion. The defendants should have shown they had done their duty as far as they could.

*Curia, per* SUTHERLAND, J. The bill of exceptions presents the question, whether an action on the case will lie against overseers of the poor, for omitting or refusing to take the necessary measures to provide for paupers, in favor of an individual, who, from motives of humanity, furnishes them with the sustenance and attention, which their situation absolutely requires.

The declaration does not aver that the defendants acted fraudulently or maliciously; and there is no evidence that their neglect was wilful, and without reasonable excuse, except what is to be inferred from their admission, that *M'Gill* and his wife were paupers, legally settled in the town of *Clermont*. The evidence before the justice consisted principally of the admissions of the parties: and

his return is not sufficiently full and explicit, to show the bearing and pertinency of much of the evidence. But I think it is fairly to be inferred from the whole evidence, that the defendants did not intend to admit that the town of *Clermont* was bound to maintain these paupers. When the notice was served on them, they said they could do nothing about it, until they saw Mr. *Edward P. Livingston ;* and the return states that the defendants introduced and proved two written agreements between *E. P. Livingston* and his wife, and *Adam Minklaer*, junior; and also a bill of sale or agreement between *John M' Gill* and the plaintiff. The plaintiff introduced and proved three receipts given by *E. P. Livingston ;* two to the plaintiff, and one to *John M' Gill*. The defendants proved an assignment or surrender, under seal, from *John M' Gill* to *E. P. Livingston*.

From this evidence, it is probable, that *M' Gill* had been a slave ; and that, in the opinion of the overseers, it was doubtful whether he had been so manumitted as to exonerate his master from the responsibility of maintaining him. This, however, is mere conjecture ; and none of this evidence was given in the court of common pleas. All the evidence there, consisted in proof of the notice given to the defendants ; their declaration that they could do nothing about it until they saw Mr. *Livingston ;* their admission that they were overseers of the poor of *Clermont ;* that *M' Gill* and his wife were legally settled in *Clermont ;* and proof that they were unable to maintain themselves ; that the plaintiff had provided for, and kept them ; and the value of the services, &c. rendered by him.

This evidence was clearly insufficient to entitle the plaintiff to recover. The defendants were not bound, nor had they any authority to make provision for the paupers in the first instance. All they could do, was, to apply to a justice of the peace, and, together with him, inquire into the state and circumstances of the persons asking relief ; and if it should appear that they were in such indigent circumstances as to require the relief sought, then the justice was bound to give an order in writing to provide for them.

UTICA,
Aug. 1826.

Minklaer
v.
Rockfeller.

Until such order was given, the defendants had no authority to make any provision.

If they were guilty of any omission of duty, it was in not making the application to a justice, and, together with him, making the necessary inquiry.

But, for aught that appears, all this may have been done; and the justice may have refused an order. When the plaintiff seeks to charge the defendants as public officers, for an omission of duty, he is bound to prove it affirmatively and clearly. (11 *John.* 114. 2 *Mass. Rep.* 243. 3 *Caines*, 317, *per Livingston, J.*) That, I think, in this instance, has not been done.

But, admitting that the defendants refused to take the necessary measures to obtain the order, are they responsible to the plaintiff, in an action on the case, for the trouble and expense of supporting and taking care of the paupers while they remained in his house?

I do not see on what legal principle the action can be sustained. The plaintiff was under no legal obligation to take care of the paupers. It was a commendable humane act, undoubtedly : but it must be considered voluntary on his part, and cannot lay the foundation of an action against the overseers of the poor. Damage to the plaintiff was not the necessary or legal consequence of the non-feasance of the defendants ; the proper, and for aught that I perceive, the only course to be pursued, when the overseer refuses to act in a case like this, is, to apply to this court in behalf of the paupers for a mandamus. It is true that the paupers must be supported by some one pending the application; and that the mandamus would afford no means of re-imbursement. I see no remedy for this, unless the legislature should think proper to interfere, and make the overseers responsible upon an implied assumpsit for necessary expenditures in support of paupers, chargeable upon their respective towns. It appears to me, that if an action would lie at all, it must be in the name of the paupers themselves. (*a*)

*King* v. *Butler*, (15 *John.* 281,) and *Olney* v. *Wickes*, (18 *John.* 122,) have no application to this case. They

(*a*) Vid. 5 *Cowen*, 669, *per Spencer*, Senator.

merely decide that an overseer of the poor may bind himself, in his individual capacity, by an express promise to pay for the maintenance of a pauper.

UTICA,
Aug. 1826.

Jackson
v.
Marsh,

Judgment affirmed. (*b*)

(*b*) Vid. *Gourley* v. *Allen*, (5 Cowen, 644,) and *Flower* v. *Allen*, (*id.* 654.)