UTICA,
August, 1829.

Palmer
v.
Vandenbergh.

T. PALMER vs. VANDENBERGH and CHAPMAN, overseers of the poor of the town of Coxsackie.

THIS was an action of *assumpsit*, tried at the Columbia circuit, in September, 1827, before the Hon. WM. A. DUER, one of the circuit judges.

In October, 1816, a *written* contract was entered into between the plaintiff, residing in the town of Hillsdale, in the county of Columbia, and one John Thompson, then an overseer of the poor of the town of Coxsackie, in the county of Greene, for the support and maintenance of a pauper chargeable to Coxsackie, by which the plaintiff was to receive $45 per annum for such support; the first annual payment to be made on the 1st December, 1817. This contract was entered into by the overseers on the foot of an order of a justice of the peace of the town of Caxsackie, reciting the pauper to be chargeable to that town, and stating the annual allowance to be made to the plaintiff for the support of him but omitting to give a direction to that effect. The plaintiff provided for the pauper up to February, 1827, the time of the commencement of this suit, when it was admitted the defendants were overseers of the poor of Coxsackie. On the 5th March, 1825, the defendant Chapman, who was then an overseer of the poor of Coxsackie, paid to the agent of the

Paupers must be supported, since the 27th November, 1824, by the county in which they happened to be on that day, although previous to the passage of the act of the legislature of that date, the legal settlement of such paupers was in another and different county.

Where a pauper belonging to one county was, on the 27th November, 1824, residing with an individual of an other county, who supported him under a contract with the overseers of the poor of the town bound to provide for him, and such contract was rescinded on the 5th March, 1825, leaving the pauper still residing with such person, who continued to support him until February, 1827, and then brought an action against the successors of the overseers of the poor, with whom the contract was originally made, it was held that the action would not lie, there being no promise either express or implied to pay for the support of the pauper.

And it seems that, under the provisions of the act of 1824, the town in which such pauper happened to be on the day of the passage of the act, would have no right of action against the town where the former settlement of such pauper was.

An order of the justice of the peace, authorizing an annual allowance for the relief of a pauper, is authority sufficient to an overseer to contract for the support of such pauper. A formal adjudication of the settlement of the pauper in such case is not necessary.

Overseers of the poor may make contracts, within the scope of their authority, which are binding upon them in their official capacity, and upon their successors in office; which successors are liable to be sued for a non-performance of the contracts of their predecessors.

It seems, that an order of a justice authorizing the expenditure for which a recovery is sought, is not necessary to the maintenance of an action against an overseer upon an express promise.

A contract for the support of a pauper for an indefinite time may be rescinded by the overseers; and where no objection is made, as to the particular time of its termination, it may be put an end to at any time.

plaintiff the annual payment then due, and sent a written no-
tice to the plaintiff that the town of Coxsackie would not
pay for the support of the pauper after that day: and subse-
quently, on the 3d April, 1826, there was paid to the plain-
tiff the sum of $12, when he gave a receipt in full for the
support and maintenance of the pauper to the 5th March,
1825. This payment was made and received so as to leave
the question of the defendant's liability under the contract
unembarrassed as to the portion of time intervening between
the 1st December, 1824, and the 5th March, 1825, when
the notice was given that the town of Coxsackie would no
longer pay for the support of the pauper. During the progress
of the trial, several questions of law were raised which were
not decided by the presiding judge, but reserved for the opin-
ion of this court. It was insisted by the defendants that the
order of the justice directing provision to be made for the
pauper, and the contract of the overseers in pursuance there-
of, were inadmissible in evidence without the production of an
order of one or more justices of the peace of the county of
Greene, *adjudging* the pauper to be chargeable to the town
of Coxsackie, and *ordering* provision to be made for him ;
that *one* overseer could not bind himself and his co-overseer
without the concurrence of such co-overseer; and that the
contract in this case being prospective and for an indefinite
period, was beyond the scope of authority of the overseers.
The jury found a verdict for the plaintiff for $78, subject to
the opinion of this court.

*A. L. Jordan*, for plaintiff. The contract made by the
overseers of Coxsackie, in 1816, was binding upon their suc-
cessors, being made officially and within the scope of the au-
thority of the parties contracting. (5 Cowen, 359.)

It was not incumbent upon the plaintiff to shew a justice's
order authorising the relief granted the pauper ; nor was he
bound to inquire whether an order was made. (15 Johns.
R. 281.) And the successors of the overseers making the
contract, having adopted it by paying the stipulated price for
several years, are equally bound with their predecessors.

· The contract was good although made by but one overseer. <span>UTICA,</span>
Where power is delegated to several for the performance of <span>August, 1829.</span>
a public trust, the execution of the trust may be by a majority.              <span>Palmer</span>
(Coke Litt. 181, b.  3 T. R. 592.  6 id. 388.  6 Johns. R. <span>v.</span>
39.  7 Cowen, 526, note.)  The consent of the overseer not <span>Vandenbergh.</span>
acting may be presumed from his acquiescence.  Besides, the
statute relative to the poor, (1 R. L. 287, § 25,) contemplates
a several exercise of the power of the overseers in cases like
this, and such has been the universal usage.

The defendants could not rescind or put an end to the
contract, without removing the pauper from the town of
Hillsdale.  At the making of the contract with the plaintiff;
the town of Hillsdale had the power of removing the pauper
to the town of Coxsackie ; by a statute subsequently passed
in November, 1824, (Statutes, vol. 6, p. 382 c. § 8,) that
power was abrogated.  The plaintiff is liable to the over-
seers of Hillsdale, on the ground that his act in taking the
pauper had cast a burden on them which they had not the
power to remove ;  (15 Johns. R.  436 ; 18 id. 419 ;) and
consequently, the plaintiff being liable to the overseers of his
own town, the defendants could not rescind the contract
without removing the obligation which he had incurred.

*L. Bronk & E. Williams*, for defendants.  The contract
made with the plaintiff was not obligatory upon the defend-
ants ; there having been no adjudication as to the settlement
of the pauper, or order providing for his support.  The fact
of the defendants having acted under the contract, is no rea-
son for enforcing it against them after they gave notice of
their intention no longer to be bound by it.  The contract
was for an indefinite time, and therefore not obligatory.
Overseers of the poor cannot make a contract binding a town
*pro futurum*, nor beyond the term of their own continuance
in office.  Their successors are liable for debts accruing in
the previous year, and may pay them without order ; but for
expenses accruing during their own time, they are not au-
thorised to expend money without a previous order.  But if
the contract was obligatory, the defendants had a right to re-
scind it.  This necessarily must be so, or the contract would
continue where the inducement to it totally failed ; as if the

pauper, by the inheritance of property, became able to support himself, or if the town to which he had been a charge by any other means became relieved from his support.

The town of Coxsackie was so relieved, by the act of the legislature referred to on the other side. The pauper was no longer one of the poor of Coxsackie, and the town was no longer liable for his support. The county of Columbia became bound to support him. Being in that county at the passage of the act of 1824, he could not be removed to Coxsackie, which is in another county. The authorities cited by the counsel for the defendants were 1 R. L. 279, § 25 ; 15 Johns. R. 281 ; 18 id. 122 ; 5 Cowen, 312, 644, 654 ; 6 id. 279, 280 ; Statutes, vol. 6, p. 382 c. § 8.

*By the Court,* SAVAGE, Ch. J. It was objected on the trial that the contract should not be given in evidence, unless the plaintiff shewed an original order of one or more justices of the county, adjudging the pauper to be chargeable upon the town of Coxsackie, and ordering the overseers to provide for and maintain him. The 25th section of the act for the relief and settlement of the poor, (1 R. L. 287,) directs, that when any poor person belonging to any city or town shall apply for relief to an overseer, such overseer shall apply to a justice of the peace, and the justice and overseer shall enquire into the circumstances of such person, &c. and the justice shall make an order for a weekly or other allowance. The acts of the overseer and justice in making the allowance are sufficient evidence of the settlement of the pauper. The order thus made is a sufficient voucher for the overseer in the settlement of his accounts, for so much money as he shall pay under it ; and such order, of course, is an authority for the overseer to contract for the support of the pauper to the extent of such order. The statute does not require a formal order in such a case, adjudging the settlement of the pauper to be in such town. The order in this case, though not very formal, is an order from the justice authorizing an annual allowance of $45 ; and no objection was made to the fulfilment of the agreement, till since the passing of the act of November 27th. 1824.

It was also objected that the agreement was not binding, because made by only one overseer, and because it was indefinite. Both these objections come with an ill grace, after the contract has been annually confirmed, by a compliance with its terms, for more than nine years, and particularly as the order of the justice has never been revoked or modified and therefore the payment of the money perfectly justified. The liability of overseers of the poor is a subject of much delicacy as well as difficulty. The several towns as well as counties in this state are corporations to a certain extent; and their officers, who have in trust the various interests of the town, are considered corporators so far as to enable them to perform their duties and to execute their trusts. In the language of the late chief justice, (Spencer,) "There can be no doubt that where a public office is instituted by the legislature, an implied authority is conferred on the officer to bring all suits as incident to his office which the proper and faithful discharge of the duties of his office require. (18 Johns. R. 418.) There can be as little doubt that the overseers of the poor, having in their hands or subject to their control, under the sanction of a justice, the funds of the town appropriated to their particular department, have authority to make contracts which are obligatory upon them. So long as they contract within the scope of their authority, their contracts are valid and obligatory upon them in their official capacity, and upon their successors; but if they transcend their powers, though they may be individually responsible, their successors are not.

In *King* v. *Butler*, (15 Johns. R. 281,) an overseer was held responsible upon his *absolute promise* to pay, without shewing any order of a justice. It was held to be the duty of the overseer to procure the order, as his authority for granting relief; and, of course, in the absence of all evidence on the subject, as every public officer is presumed to have done what was his duty to do, he is presumed to have obtained the order previous to his furnishing relief, or making a promise to that effect. In that case, the legal as well as moral obligation upon the officer to afford assistance was held

*Margin note:* UTICA, August, 1829.

Palmer v. Vandenbergh.

UTICA,
August, 1829.

Palmer
v.
Vandenbergh.

a sufficient consideration. If, therefore, an overseer contracts absolutely to support a pauper, without an order for that purpose, he is responsible personally. In the case of *Olney* v. *Wickes*, (18 Johns. R. 124,) the defendant evidently did not intend to become personally liable: his expressions were all guarded, and throughout he contracted as the agent of the town. The court on that ground decided that he was not liable, as he was out of office when the suit was brought. It does not appear in that case whether an order had been made or not. That was a case of paupers sent by an order of removal from Saratoga to Schaghticoke, of which latter town the defendant was an overseer. In *Todd* v. *Birdsall*, (1 Cowen, 260,) Birdsall had paid money for an overseer of the poor of the town of Cortland, on the written request of the latter, to defray the expenses of one of the paupers of that town; and it was held that the defendants, Todd and McCord, who were the successors of the officers who had made the contract, were liable for the official contracts of their predecessors. This must be sound, or there must often be a failure of justice. The person in office contracts as trustee of the fund raised or to be raised by the town; the person contracting goes out of office; he is not personally liable, because he contracts as a public officer, and not in his private capacity; and for another reason, viz. because he has no longer any control over the funds of the town which are appropriated to meet the contract. Those funds have passed into the hands of his successor, by virtue of the directions of the statute. That successor, therefore, having the means in his hands, and representing the same interests of the town in reference to which his predecessor contracted, and having succeeded to the office with all its duties, rights and responsibilities, is the person upon whom the duty devolves of fulfilling the contract; and in case of non-performance, against whom an action should be brought. I know of no case which controverts these principles. The cases of *Gourlay* v. *Allen*, (5 Cowen, 644,) and *Flower* v. *Allen*, (id. 564,) and of *Minklaer* v. *Rockfeller*, (6 id. 276,) prove that overseers are not liable upon an *implied* assumpsit for articles furnished or services rendered for the paupers of their towns, not at the re-

quest of the overseers. These cases do, indeed, establish the necessity of an order of a justice, but there is nothig in either of them overruling the case of *King* v. *Butler*, where the want of an order was held no excuse for the non-fulfilment of an *express* promise ; but it is cited with approbation by Spencer, senator, in 5 Cowen, 664, with this remark ; " There the overseer expressly directed the attendance, and promised to pay for it; and the court very properly held that it was his business to see that he was duly authorized." In *Gourlay* v. *Allen*, (id. 652,) his honour the chancellor cites with approbation the case of *Todd* v. *Birdsall*, saying that for a clear debt the successors would be liable. If these principles are correct, it follows, 1. That the contract between the plaintiff and Thompson, overseer of Coxsackie, was valid ; 2. That it was authorized by the order of a justice, within the scope of the overseer's authority, and therefore binding upon him personally, so long as he continued overseer, but no longer ; 3. That it is obligatory upon the defendants, as overseers of the town of Coxsackie.

It was contended upon the argument that the contract, if valid, was rescinded or determined by the notice of the 5th March, 1825. To this it is answered, that the defendants could not put an end to the contract without taking back the pauper. This seems to be reasonable ; but the question is one of strict legal right. As the contract was for no definite period, unless perhaps by construction for one year, either party was at liberty to put an end to it at the end of the year. And as no objection was made by the plaintiff as to the particular time of its termination, it seems to me the contract was determined at the time when the plaintiff received his pay up to the 5th March, 1825, as of that date, as it appears that the object of the defendants was to leave the question of liability unembarrassed, and it was so understood by the plaintiff. If the law of 1824 had not been passed, the parties would have been left as they were when the contract was entered into. The plaintiff was under no obligation to support the pauper. On application to the overseers of Hillsdale, they would have sent the pauper to the town of Coxsackie, and there would have been an and of the matter, But by the 8th

section of the act to provide for the establishment of county poor houses, passed November 27th, 1824, it is enacted, that no person shall be removed as a pauper from one town to another, except as between towns in the same county, but that the county where any person shall become sick, &c. shall support him. This act was in force when the contract in this case was determined; the town of Hillsdale, therefore, could not remove the pauper, but was bound to provide for him. Whether the town has any remedy over against the plaintiff does not appear in the case, nor was it necessary that it should so appear, as I do not see how that fact could affect the question between these parties; as in the late case of *Gourlay* v. *Allen*, (5 Cowen, 644,) the principle seems to be established that *overseers* are not liable, unless there has been an express promise to pay, or the services for which compensation is asked have been rendered at their request. The case as it is now presented, is like that of *Minklaer* v. *Rockfeller*, (6 Cow. 280.) The plaintiff has provided for a pauper belonging to the town of Coxsackie, but not at the request, either express or implied, of the defendants; they are therefore not liable.

There is another ground of defence, that by the act of 1824, the pauper in question became chargeable to the town of Hillsdale, and therefore Coxsackie is not bound to provide for him at all.

I cannot believe that such a result was intended by the legislature. The act of 1813 is not repealed any further than that some of its provisions are virtually repealed by being inconsistent with the later act. The act of 1813 proceeds upon the principle that *every town* shall support the poor who have a settlement there. The act of 1824, on the contrary, proceeds upon the principle that *every county* shall support all the poor who become such within its bounds; retaining the old law as to the duties of the several towns with each county. The legislature were not aware, probably, that every town did not keep their poor at home. The act of 1824 is prospective in its terms, but no provision is made for returning poor who were out of their own town when the act was passed. As therefore no provision is made for returning the

pauper in question, nor for supporting him at the expense of the town where he was settled, but a declaration was made, "that the county where such person shall become sick, infirm and poor, shall support him," the consequence is, that Coxsackie becomes discharged of the burthen and it is thrown upon Columbia county, and of course upon Hillsdale. This is unjust, but the injustice should not be charged upon the legislature, as it is to be remembered that the town of Hillsdale might, under the law of 1813, have sent the pauper home. Not having done so, they must bear the burthen thrown upon them by their want of vigilance, and the change of the general system of relieving the poor. I am of opinion that the defendants are entitled to judgment.

UTICA,<br>August, 1829.<br><br>Palmer<br>v.<br>Vandenbergh.

Judgment for defendants.*

---

* The question alluded to in the above opinion of a suit *by one town against another*, upon a state of facts similar to the above, arose and was decided during the present term, in the cause of *The Overseers of the Poor of the town of Mamakating* v. *The Overseers of the Poor of the town of Deerpark*. Two paupers belonging to the town of Deerpark, in *Orange* county, were kept and provided for by the overseers of Deerpark, in the town of Mamakating, in *Sullivan* county, during the years 1823 and 1824, and up to the first of April, 1825. In September, 1824, the overseers of Deerpark were applied to, to take away the paupers, but refused. In the fall of 1825, the paupers were carried to Deerpark, the overseers refused to receive them, and the persons bringing them were threatened with a prosecution. The paupers returned to Mamakating and were provided for by the overseers of that town, who expended $152 in their support, and then bought their action against Deerpark to recover back the money thus expended. A verdict was taken for the plaintiffs under the direction of the presiding judge at the circuit, the Hon. JAMES EMOTT, who expressed his opinion that the plaintiffs were entitled to recover. This court, for the reasons assigned in the above case, set aside the verdict, and ordered a new trial, costs to abide the event.