## M'LEES vs. HALE & BOWEN, overseers of the poor of Greenfield.

*An agreement between overseers of the poor and an individual that the latter shall support a bastard child until it arrive to the age of 5 or 6 years, or as long as the child should be chargeable to the town, at a stipulated price per week, the payment for the support to be made weekly if desired, is not within the statute of frauds avoiding agreements not to be performed within one year from the making thereof.*

*Such agreement cannot however be enforced against the successors of the overseers, if the contract was made without an order from justices requiring the overseers to provide for the support of the child; an order of filiation alone is not enough to make the contract obligatory upon the successors.*

*Either party may rescind such contract by mere notice that he will no longer be bound by it.*

THIS was an action of assumpsit, tried at the Saratoga circuit in June, 1831, before the Hon. ESEK COWEN, one of the circuit judges.

The suit was brought for the maintenance of a bastard child, under a contract made in 1825, by the then overseers of the poor of Greenfield, with the plaintiff. In 1825, *Hale*, one of the present defendants, and a Mr. *Child*, were the overseers of the poor of Greenfield; in May or June of that year, *Hale* made an agreement with the plaintiff that the latter should support the child until it should be 5 or 6 years old, or as long as the child should be chargeable to the town, at $\frac{7.5}{100}$ per week, and that the plaintiff might have his pay *every week*, if he so desired. The plaintiff produced an *order of filiation*, bearing date 7th April, 1825, charging one *Denton* to be the father of a bastard child, born of the body of a daughter of the plaintiff, in November, 1824, and ordering Denton to pay the sum of $\frac{7.5}{100}$ weekly towards the maintenance of the child, and proved that he had been paid by the overseers of the poor, for the support of the child, up to the 19th October, 1825. This action was brought against the *present defendants*, who were the *successors in office* of *Hale* and *Child*, the overseers of Greenfield in 1825, for the support of the child since 19th October, 1825. The defendants proved that about a week after the

last payment to the plaintiff, in October, 1825, one of the justices of Greenfield informed the plaintiff that *Denton* had refused payment pursuant to the order of filiation, and that the town would not pay any longer for the support of the child ; that he must throw it on the town. The plaintiff told the justice that he had seen *Hale* a few days before, and that Hale had refused to pay any longer. It was proved that the order of filiation had not been revoked, that both *Denton* and his surety were dead, that the executors of Denton's surety had been sued in 1827 for the non-performance of the order of filiation, and that judgment had passed in favor of the surety on account of some defect in the bond or recognizance. The plaintiff offered to read in evidence the proceedings in that suit, for the purpose of shewing an averment in the declaration, which was of April term, 1827, that the child then was and had been chargeable to the town from the date of the order. The judge refused to hear the evidence, and charged the jury that the contract proved, if any, was a contract by *parol* to keep the child for 5 or 6 years, and being for more than one year, it was void by the statute of frauds, and the overseers might refuse at any time to be further bound by it ; that the overseers were liable for the keeping of the child up to the time that notice was given that the town would no longer pay for its support, because up to that period it was an executed contract, but that after such notice they were no longer liable. The jury found a verdict for the plaintiff for only $2,25, which the *plaintiff* moved to set aside.

*J. Ellsworth,* for the plaintiff.

*W. L. F. Warren,* for the defendant.

*By the Court,* SAVAGE, Ch. J. By the statute of frauds, 1 *R. L.* 78, § 11, no action shall be brought upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement shall be in writing. In *Fenton* v. *Emblers,* 3 *Burr.* 1281, the construction of the statute of 29 *Ch.* 2, *ch.* 3, § 4, which is like ours, was decided to be, that an agreement void by the statute is

NEW-YORK,
May, 1833.

M'Lees
v.
Hale.

such an one as, by the express appointment of the parties, the thing is not to be performed within a year; that it does not embrace cases where the thing only may be performed within the year. This court have adopted the same construction in *Moore* v. *Fox*, 10 *Johns. R.* 244, where it is said that, to bring the case within the statute of frauds, there must be an express and specific agreement *not* to be performed within the space of a year; and if the thing may be performed within the year, it is not within the act. In that case, Moore had promised Fox to pay him $2 a year for his services as a minister; he had paid it for about four years, in half yearly payments, and had refused for about two years, for which the action was brought and a recovery had before a justice. The court held that that promise was to be performed according and in proportion to the service rendered, and that it did not appear but that it was to be performed within a year. The case before the court seems to me to be analogous. The payment was to be made *weekly;* it appeared, therefore, not only that the agreement was not one which was *not* to be performed within a year, but that it was necessarily to be performed within a year, to wit, at the expiration of every week. In *Lown* v. *Winters*, 7 *Cowen*, 364, the agreement was made in January or February, 1824, to pay $100 in March, 1825, which was more than a year; there the payment could not be made within the year, and was adjudged to be within the statute and void. The case of *Fenton* v. *Emblers* appears to me to be stronger than this. The agreement was in consideration that the plaintiff would become the house-keeper of the defendant's testator, and continue as long as the parties pleased; he would pay her at and after the rate of £6 per year, and by his last will give her an annuity of £16 per year. But it might have been done within a year. In this case, as I have already remarked, the agreement was to be performed within the year. Had it been that the plaintiff should keep the child five years and then receive his pay, the contract would have been clearly void. Here the agreement was that the plaintiff was to support the child until five or six years old, or as long as it should be chargeable, and the defendant was to pay seventy-five cents a week, and, if the plaintiff wished it,

might have his pay every week. Here was also a contingency; the child might not continue chargeable for a year or a month. It was a contract to be performed immediately and constantly, the utmost limit of which was six years; and if that limitation should be held void, it is not such an essential part of the contract as to avoid the whole. Were the contract to keep the child so long as he should continue chargeable, there could be no pretence that such a contract would be within the statute. Under this aspect of the case, however, the defendants' counsel contends that it should appear that the child was chargeable and continued so, *vide Stevens* v. *Howard*, 12 *Johns. R.* 196, which decides that point and seems conclusive. A new trial ought therefore to be granted, unless it clearly appears that for other reasons the plaintiff cannot recover.

This is an action against the overseers as overseers, and not individually. In order to charge the successors in office, it should appear that the officers making the contract had authority to do so. If an overseer contracts to support a pauper without an order for that purpose, he transcends his legitimate authority; 1 *R. L.* 287, 8; 3 *Wendell*, 198; 15 *Johns. R.* 281; and though he may be personally liable in such case, yet his acts, not being within his authority, are not obligatory upon his successors in office. In the case of *King* v. *Butler*, 15 *Johns. R.* 281, an overseer was held responsible upon an express promise, though no order was obtained. So here, were the action against *Hale*, who made the contract, in his individual capacity, it would be no defence for him that he had not obtained an order; but when the successors in office are sought to be charged, an order should be shewn, as they are responsible only upon the lawful contracts of their predecessors. In this case there was no order but the order of filiation; that order was compulsory upon the putative father, but it did not authorize the overseers to pay any weekly or other sum for the support of the child.

There is another difficulty in the way of a recovery in this case. Even admitting that the agreement was valid, it appears to have been determined by Hale. It is testified by one

of the justices who made the order of filiation, that he told the plaintiff the overseers would pay no more after the death of the putative father, and the plaintiff told him that Hale had refused to pay any longer. In *Palmer* v. *Vandenburgh*, 3 *Wendell*, 199, it was held that contracts of this nature were revocable. There the contract was for $45 per annum for the support of a pauper, but for no definite period. The defendants (overseers) gave notice that the town would pay no longer for the support of the pauper, and it was held that as the contract was for no definite period, unless for one year, either party was at liberty to put an end to it at the end of the year. So here, the contract was for no definite period, unless it were one week, and therefore either party was at liberty to put an end to it at the end of the week. Had the child in this case become an invalid or sick, so as to have required the expenditure of more money than the weekly allowance, the plaintiff would not have been willing to have incurred such extra expense, and would have been at liberty to have rescinded the contract, or rather to put an end to a contract which had no definite termination except at the election of either party. The same officer who made the contract gave notice that he would pay no longer.

I am therefore of opinion that a new trial be denied.