## Tolley *v.* Greene and others.

Where a husband gave to his wife by will, in lieu of dower, *a decent and comfortable support and maintenance out of his estate in sickness and in health during her lifetime,* leaving the residue of his property to his two children, it was held that such allowance was not to be measured by the sum requisite to support her in a boarding house; but that she should have sufficient to maintain her in housekeeping at the place of her residence, and in the manner to which she had been accustomed while living with her husband; it appearing that the sum necessary for such a maintenance was less than the interest on one-third of the testator's estate.

Although an agreement which *may* be performed within a year, is not within the clause of the statute of frauds respecting contracts not to be performed within that period; an agreement which cannot be performed within a year, except upon a contingency, which the parties could not hasten or retard, as the death of some person, is not within the statute. And the possibility of performance which withdraws a case from the force of the statute, must rest upon human effort or volition, and not upon providential interference. *Semble.*

May 10, 11; August 19, 1844.

The bill in this cause was filed by the widow of William Tolley, late of Athens, in the county of Greene, and the suit was heard on pleadings and proofs.

W. Tolley by his last will and testament left two-thirds of his property to his son Frederick W. Tolley, and one-third to his

Tolley v. Greene.

daughter Altenah S., who became the wife of Samuel Wescott; subject to a provision for his wife which was in these words:

"*First.* It is my will and order that my beloved wife Rebecca have a decent and comfortable support and maintenance out of my estate in sickness and in health, during her lifetime, in lieu of her dower right which she might claim out of my estate. I also give and bequeath to my said beloved wife all such goods and chattels as she brought with her when she came to reside with me and such as she has purchased with her own money."

W. Tolley died in 1836, and his son who was his sole executor, died in 1842.

The bill was filed against Wescott and wife, and the administrators of F. W. Tolley, and sought to have a sufficient sum set apart and secured for the complainant's support and maintenance for life according to the bequest in the will of W. Tolley, alleging that she had accepted the provision made for her by the will in lieu of dower.

The defendants set up an agreement made by the complainant with Wescott and F. W. Tolley in 1837, by which she was to receive $210 a year during her life, in full of her claim and right for a support under the will; and the principal litigation was in reference to the making of that agreement. The report of the case omits all of the opinion which related to that question.

*J. Van Vleck*, for the complainant.

*H. Hogeboom*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—William Tolley, by his last will and testament, gave to his wife, (the complainant,) in lieu of dower, a "decent and comfortable support and maintenance, out of his estate, in sickness and in health, during her lifetime." He gave all the bulk of his estate to his son Frederick and his daughter who is now the wife of Wescott; two-thirds to the son, and one-third to the daughter. The son was his executor. The complainant has never claimed her dower, and is

entitled to the provision made for her by the will, unless she has done some act which precludes her from asserting her claim.

The defendants state in their answer, that on or about the fourth day of February, 1837, the complainant of the one part entered into an agreement with Frederick W. Tolley and Wescott, acting for himself and his wife, of the other part, that she would receive, and that they would pay to her at and after the rate of $210 a year during her life, in lieu and full satisfaction of her claim for and right to a support and maintenance under the will, to be paid to her at such times and in such sums as she should desire ; of which sum Frederick was to pay two-thirds and Wescott the remainder. The existence and effect of this agreement, are the most important questions in the cause.

(The Assistant Vice-Chancellor then examined the evidence on this point, and thus stated his conclusions:)

Upon the whole testimony I feel perfectly satisfied that the agreement set up in the answer is not sustained by the proofs, and that the complainant is entitled to the provision made for her by the will.

This conclusion relieves me from the necessity of deciding whether the agreement, if proved, was not void by the statute of frauds. It is settled that a parol agreement which *may* be performed within a year, is not within the statute. But I believe that there is no reported case which decides that a contract which cannot be performed within a year, except upon a contingency which neither party nor both together can hasten or retard, such as the death of one of them or of a third person, is not within the statute. The possibility of performance in the adjudications, rests upon human effort or volition, not upon providential interference. (*Fenton* v. *Emblers*, 3 Burr. 1278 ; *Wells* v. *Horton*, 4 Bing. 40 ; *Moore* v. *Fox*, 10 Johns. 244 ; *McLees* v. *Hale*, 10 Wend. 426 ; *Plimpton* v. *Curtis*, 15 ibid. 336 ; *Lockwood* v. *Barnes*, 3 Hill, 128 ; *Artcher* v. *Zeh*, 5 ibid. 200 ; *Russell* v. *Slade*, 12 Conn. 455 ; *Blake* v. *Cole*, 22 Pick. 97.)

The annual amount which is to be paid to the complainant should be ascertained in this suit.

The defendants have presented but little testimony on the sub-

ject, and they insist that there shall be a reference to a master to inquire and report the proper amount.

It is now two years since they have paid any thing to the complainant, and as she is wholly dependent upon the provision in the will, I am admonished that there ought to be no further delay in disposing of the controversy than is absolutely necessary.

From a careful examination of the testimony, I believe that there is sufficient material furnished on both sides to enable the court to fix the annual support with justice to the parties. It is evident that the contest as to the amount will turn principally on the question whether a suitable provision is to be made to enable the complainant to keep house in the village where she resides, or whether she is to be restricted to living at board in the same village or in a country town. Upon this point, I can have no hesitation. She was the wife of W. Tolley for about 13 years, living plainly, but in a good house, and with comfortable appendages. Her husband left only two children, who inherited some $35,000, subject to the support of his wife. If he had died intestate, she would have received absolutely a principal sum larger than that on which she now asks merely the interest for the rest of her life.

It is not reasonable under such circumstances that this infirm old lady should be compelled to pass the remainder of her life in a boarding house; restricted in room and in comforts, and indeed in what is necessary for her due support in sickness, by the stinted allowance mentioned in the defendant's testimony. I do not believe that W. Tolley would have thus limited her, if he could have anticipated the existing state of things.

Considering her station and mode of life, both before and after her marriage with W. Tolley, and the amount of his estate, I think she is entitled to be supported and maintained in housekeeping in a plain and economical manner, at the place of her residence.

The witnesses furnish sufficient *data* to warrant me in deciding upon the amount to be paid to her on this basis, and in my judgment, Dr. Pierce's estimate of $600 yearly, is a reasonable

and just allowance. This is about fifty dollars less than the average of the estimates made by the complainant's witnesses.

To secure the payment of this sum yearly during the complainant's life, the defendants must pay to the register of this court, or transfer to him securities, sufficient to yield an annual interest of $600, for her benefit. Or if they prefer it, they may purchase for her a life annuity of that amount from The New York Life Insurance and Trust Company.

The defendant Wescott, as between himself and the representatives of F. W. Tolley, must bear one-third of the requisite payment.

The defendants must also pay to the complainant at the same rate for the two years which have elapsed, since any payment was made to her. In effecting the deposit of securities with the register, the complainant is entitled to consider as unadministered such of the securities formerly belonging to W. Tolley, as remained in the hands of F. W. Tolley's representatives when this suit was commenced, and to have the same transferred to a sufficient amount to secure her annuity.

The defendants must also pay the costs of the suit; two-thirds are to be borne by the estate of F. W. Tolley, and the remaining third by Wescott. Although no demand was made of Wescott, yet the ground set up in his defence shows that it would have been wholly unavailing.

Decree accordingly.