Robbins *v.* Woolcott.

the rights of the appellant, and that judgment ought not for that reason to be reversed.

The judgment must be affirmed.

[ONONDAGA GENERAL TERM, January 2, 1867. *Bacon, Foster* and *Mullin,* Justices.]

———•••———

## GEORGE B. ROBBINS, Supervisor of the town of Marcy, *vs.* WILLIAM WOOLCOTT.

*It seems* there is no principle of the common law that will authorize a recovery for fraudulently procuring a false account to be audited by any officer or board clothed with the power to audit and settle accounts against either the state, county or town. But for money fraudulently obtained, an action will undoubtedly lie.

If money is fraudulently obtained from a town, the town is the proper party to sue for it. If money is paid by a town on a claim made against it, there is a right of action to recover it back; and the action must be in its name, and not in that of the supervisor.

Where, at the time of joining issue, in an action brought before a justice of the peace, the defendant, without distinctly objecting to the right of the plaintiff to sue, took the objection that the action was not brought in the name of the plaintiff, with the addition of the name of his office as supervisor; *Held* that this objection conceded the plaintiff's right to sue, provided he had annexed to his name the name of his office.

One of the grounds of a motion for a nonsuit was that there was no cause of action shown to exist, in favor of the plaintiff, against the defendant. *Held* that this objection was too general to enable the defendant to avail himself of a mistake in the name of the plaintiff; especially after he had, on joining issue, conceded the plaintiff's right to sue.

Where the fact that an action brought for the benefit of a town, is brought in the name of the supervisor, appears on the face of the complaint, the error should be taken advantage of by demurrer.

If a town officer fraudulently obtains money from the town, he is liable for it personally. Public officers cannot commit a fraud officially, so as to subject their successors to liability therefor.

In counties where the poor are a county, and not a town, charge, money paid for either the permanent, or temporary, support of a pauper is the money of the county, and not of the town. Hence the town can have no color of right to recover it back from a person alleged to have obtained it fraudulently.

In counties where there is no county poor-house, and the towns are severally

Robbins *v.* Woolcott.

liable for the support of their own poor, moneys raised for the support of the poor are placed in the hands of the overseers of the poor; and when an overseer pays out money for the support of a pauper, or contracts for his support, he is entitled to appropriate the money, in the first case, and retain it in his own hands, in the other. He has absolute control of the fund, and is liable only for moneys not lawfully appropriated.

If an overseer of the poor, having money for the support of the poor, in his hands, makes a contract with another for the support of a pauper, that is within the amount which he has a right to furnish, he may properly charge it in account, and retain it, in his settlement with the board of town auditors.

If he becomes personally liable, upon such contract, by reason of his not having obtained an *order* for the support of the pauper, it is not fraudulent for him to protect himself against such personal liability upon his contract, by retaining the amount thereof out of money in his hands.

APPEAL by the plaintiff from a judgment of the county court of Oneida county, reversing a judgment rendered by a justice of the peace.

*J. T. Spriggs*, for the appellant.

*John D. Collins*, for the respondent.

*By the Court*, MULLIN, J. The plaintiff was supervisor of the town of Marcy, in the county of Oneida, in the year 1863, and the defendant was overseer of the poor of the same town during said year and also in the year 1862. The defendant, as such overseer, contracted with one Cutler, some time in the winter of 1862, to furnish maintenance to one Barret, a poor person, residing in said town, to an amount not exceeding $10. The defendant, as overseer, presented to the board of town auditors, in the fall of 1862, an account containing a charge of $10 for the support of said Barret. There is evidence tending to show that the account was not audited in 1862, but was audited in 1863, but at what time does not appear. It was audited and allowed at some time by the board of town auditors, and the item of $10 was part of the account thus allowed.

The plaintiff, as supervisor, brings this suit to recover

Robbins *v.* Woolcott.

the $10, thus audited and allowed, upon the ground that the defendant had not in fact paid for the support of Barret $10, or any other sum. The complaint alleges that the defendant, as such overseer, falsely and fraudulently returned to said board of auditors of said town, for the purpose of being audited by them, the said item of $10, whereas in truth and in fact he had not paid that sum, or any other, for the support of said Barret.

I know of no principle of the common law that will authorize a recovery for fraudulently procuring a false account to be audited by any officer or board clothed with the power to audit and settle accounts against either the state, county or town. But, for money fraudulently obtained, an action will undoubtedly lie. If money was fraudulently obtained by the defendant, the town is the proper party to sue for it. If the money was the money of the town, and paid on a claim made against it, there was a right of action to recover it back, and the suit must be in its name, and not in that of the supervisor. *Section* 2, *title* 5, *art.* 6, *chap.* 11, *part* 1*st of the Revised Statutes*, (1 *Statutes at Large*, 329,) declares that in such suits and proceedings (suits and proceedings between towns, or between any town and an individual,) the town shall sue or be sued by its name, except where town officers shall be authorized by law to sue in their name of office for the benefit of the town. There is no statutory provision authorizing a supervisor to sue to recover back moneys illegally obtained from his town ; and as the town has capacity to sue there is no reason for giving to the supervisor the right of action in such case.

I do not find that any objection to the right of the plaintiff to sue was distinctly taken before the justice. The objection taken at the time of joining issue was that the action was not brought in the name of the officer, with the addition of the name of his office as supervisor of the town of Marcy. This objection concedes his right

to sue, provided he had annexed to his name the name of his office. When the defendant moved for a nonsuit one of his grounds was that there was no cause of action shown to exist in favor of the plaintiff, against the defendant. This objection is too general to enable the defendant to avail himself of a mistake in the name of the plaintiff; especially as he had, on joining issue, conceded the right of the supervisor to sue. The action, whether in the name of the town or of the supervisor, is for the benefit of the town, and each has the right, in certain cases, to sue to enforce and protect the rights of the town. The error in this case appeared on the face of the complaint, and should have been taken advantage of by demurrer. The defendant, if he fraudently obtained money from the town, was personally liable for it. Public officers cannot commit fraud officially, so as to subject their successors to liability therefor. The question then is, was it proved on the trial that the defendant did fraudulently obtain the money in question? This question must be decided upon the evidence contained in the return, as the justice certifies it contains all the evidence given on the trial before him. In such case there is no presumption in favor of the judgment.

I do not find a *scintilla* of evidence that the $10 for the support of Barret was ever paid to the defendant. The only evidence that could be tortured into proof of the payment is that of the plaintiff, who, in answer to the question whether he at any time had called on the defendant to pay, or to demand of him the $10, says he did, and the defendant said he had not paid it, nor never would; that he would spend $100 first. The defendant cannot be understood to say he had not paid Cutler, and would spend $100 before he would pay him. The remark of the defendant was in answer to a demand to pay the town, and he said he had not paid it, and would not pay it. If, however, there was evidence that the money had been received by the defendant, the

judgment must have been reversed, by reason of the absence of any evidence that it was obtained fraudulently.

The poor laws (1 *Stat. at Large*, 576, &c.) provide for the support of paupers by overseers of the poor in several contingencies: 1st. In counties which have a poor-house or other place provided for the support of the poor. An overseer (§ 39) may furnish support to a person needing permanent relief, until he is removed to the poor-house; and (§ 40) such overseer is allowed such sum as may have been necessarily paid out or contracted to be paid for the relief of such pauper, to be paid by the county treasurer on the order of the superintendent of the poor. 2d. In counties having a poor-house, an overseer is authorized (*Laws of* 1845, *ch.* 180, § 42 *and* § 1) to grant relief when temporary relief only is needed. This is done by written order directing such sum as shall be proper, to be expended. And such order shall entitle the overseer to recover any sum he may have paid out or contracted to pay, within the amount mentioned in such order, from the county treasurer. But the sum so allowed shall not exceed $10 for any one person or family. 3d. In those counties in which there is no poor-house, an overseer (§ 43) is authorized to make an order for the allowance of such sum weekly or otherwise, as the necessities of the poor person may require. If such pauper (§ 44) has a legal settlement in the town where the application is made, or in any other town of the same county, the overseer is required to apply the money to the relief of such pauper. The money paid by the overseer, or contracted to be paid pursuant to such order, shall be drawn by him from the county treasury on producing the order. 4th. If such pauper has not a legal settlement in some town of the county in which the application is made, then notice is to be given to the superintendent of the poor, and the overseer may support the pauper after

such notice and until the superintendents assume his support, and the overseer is to be paid therefor from the county treasury.

In addition to these special provisions, there are several general ones relating to the system provided for the care and maintenance of poor persons, which should be stated in order the better to understand the special provisions. 1st. Every county is required to elect one or three superintendents of the poor, who are charged with the care of the paupers chargeable to the county, and are authorized to determine disputes between towns as to the settlement of paupers. And in those counties in which there is a poor-house they have the charge of such house, and of the support of the poor persons therein. 2d. When the board of supervisors of any county abolishes the distinction between town and county poor, the support of the poor becomes exclusively a county charge, and the moneys paid toward such support whether to those within or outside of the poor-house, and whether ordered by a superintendent or by an overseer, are the moneys of the county and not of the towns. 3d. Where the distinction between town and county poor is not abolished by the board of supervisors, then the several towns are liable for the support of all poor persons having a legal settlement therein, and the county for such as have not a legal settlement in any town of such county. If there is a poor-house in such county, the poor belonging to the several towns are supported therein, at the expense of such towns. The moneys received from excise, fines, &c., belonging to the town, are required by law to be applied to the support of the poor, and moneys voted by the electors at town meetings for the support of the poor are required to be paid into the county treasury, and by the treasurer credited to the town; and all sums paid toward the support of the poor of such town are to be charged to it by such treasurer. But if there is no poor-

Robbins *v.* Woolcott.

house in such county, then the overseers are charged with the duty of supporting the poor by allowing and paying therefor such sums as the necessities of each poor person may require. The moneys to pay these expenses are voted by the electors, at town meetings, and collected with the other town taxes when collected, and paid over to the overseers.

It does not appear by the papers before us whether the distinction between town and county poor exists in the county of Oneida, or has been abolished by its board of supervisors; and I have not been able to find any act of the legislature making any special provision for the support of the poor of said county.

If we may take judicial notice of facts known to us outside of the papers, we could assume that there was a poor-house in Oneida, and hence that the moneys to be used in their support are paid out of the county treasury. But this fact alone would not aid us. We must know, also, whether the poor are a town or county charge. If the latter, then most clearly the money paid for either the permanent or temporary support of Barret was the money of the county and not of the town of Marcy, and as a consequence, the town could have no color of right to recover it of the defendant, however fraudulently it might have been obtained.

It becomes necessary, in the absence of proof as to whether the poor are a county or town charge, to examine the case on the assumption that they are a town charge. In that contingency, if there is a poor-house in the county, then by the provisions above cited the overseer was authorized to make an order for temporary support, and he was entitled to receive any sum he may have paid out or contracted to pay, from the county treasury, (§ 42, *cited above*,) and the treasurer was required to charge it to the town of Marcy. The money, if thus received, was undoubtedly the money of the town, although it was in the custody of the county

treasurer. But as it is proved that the defendant had contracted with Cutler for the support of Barret to the amount of $10, he was authorized to receive it, and omitting thereafter to pay it to Cutler did not make the act of receiving it fraudulent. There is no doubt but that Barret was a pauper entitled to temporary relief, and had applied for it to the defendant, and the contract with Cutler being proved to have been made, every fact necessary to entitle the defendant to the money actually existed, at the time he received the money, if he ever did in truth receive it.

If it was the law that the existence in the mind of the defendant at the time he received the money, of an intention not to pay it for the support of Barret, but on the contrary, to appropriate it to his own use, rendered the receipt fraudulent, yet no such intent is charged in the complaint, nor proved on the trial. The fraud charged is procuring the $10 to be audited and allowed by the board of town auditors as so much money actually paid for the support of Barret, when in truth he had not paid $10, nor any other sum for that purpose.

If we assume that there is no poor-house in Oneida county, and the towns are severally liable for the support of their own poor, then the moneys raised for the support of the poor were in the hands of the overseer, and when he paid out money for the support of a pauper, or contracted for his support, he was entitled to appropriate the money in the first case, and retain it in his own hands in the other. He had absolute control of the fund, and was liable only for moneys not lawfully appropriated. A contract legally made for the support of a pauper binds the successor of the officer making it. (*Hayes* v. *Symonds*, 9 *Barb*. 260. *McLees* v. *Hale*, 10 *Wend*. 426.) Where the overseer enters into a contract personally for the support of a poor person, but does not make it legally binding on his successor, he is personally liable to the person furnishing the sup-

port; and perhaps is liable even if the contract is so made as to bind his successor. (*Holly* v. *Rathbone*, 8 *John.* 148. *Gourley* v. *Allen*, 5 *Cowen*, 644. *Flower* v. *Allen*, *Id.* 654. *Everts* v. *Adams*, 12 *John.* 352. *King* v. *Butler*, 15 *id.* 281. *Olney* v. *Wickes*, 18 *id.* 122. *Grant* v. *Fancher*, 5 *Cowen*, 309.)

In this case we are assuming that the money for the support of the poor was in the defendant's hands; and as the contract was within the amount which he had a right to furnish, he might properly charge it in account and retain it in his settlement with the board of town auditors. He did not, I infer, procure an order for support, and hence, within the case of *McLees* v. *Hale*, (*cited supra*,) the successor was not bound, and as a consequence the defendant was personally liable. It surely was not fraudulent for him to protect himself against personal liability to Cutler on his contract.

This action was brought, I apprehend, under an erroneous construction of sections 51 and 52 of the Poor Laws. By section 51 it is provided, that in those counties where there are no county poor-houses the overseers of the towns shall enter in books an account of all matters transacted by them relating to their official duties; of all moneys received by them; of all moneys laid out and disbursed by them. By section 52 these books must be laid before the board of town auditors, with an account of moneys received and paid out. The board is required to compare such accounts with the entries in the book; examine the vouchers, and audit and settle the same; and state the balance due from such overseers, or to them, as the case may be. No credit shall be allowed to any overseer for moneys paid, unless it shall appear that such payment was made pursuant to a legal order. It seems to have been supposed that the account of the overseer must be audited and allowed before he can be paid. But clearly this cannot be the meaning of the section. The money for the support of the poor,

Robbins *v.* Woolcott.

whether it is paid into the county treasury and paid out by the superintendent, or is paid over to the overseer, is raised in advance of the expenditure, and is, or is supposed to be, in the hands of the treasurer or overseer. The overseer presents his account to the board of auditors, so as to determine, not what he shall be paid, but whether he is entitled to keep what he has taken. It is not true, doubtless, that in all instances the money required is actually in his hands. He may issue orders or make contracts when there are no funds with which to pay. He must render an account of these also, and in such case the board audits before payment; and if he receives the money allowed for such expenditures, it is in order to pay debts actually due to himself, or to other persons holding the orders, or to whom he is liable for support rendered upon a contract made with him. If an overseer, under such circumstances, should charge for moneys paid, or claim allowance for liabilities incurred, which had no existence in fact, and obtain the money, he would be guilty of fraud. But there is no evidence in this case which authorizes any such imputation. On the contrary, a contract had been made on which he was liable, and for which liability he had the right to indemnity.

In no view of the case which I have been able to take can I discover any ground on which to rest a recovery; and I am therefore of the opinion that the judgment of the county court should be affirmed.

Judgment affirmed.

[Onondaga General Term, April 2, 1867. *Morgan, Bacon, Foster* and *Mullin,* Justices.]