## SUPREME COURT.

THE PEOPLE *ex rel.* J. A. H. HASBROUCK agt. THE BOARD
OF SUPERVISORS of the county of New York.

The law provides for the action of a *board of supervisors* in a *judicial* character,
    as deciding between the claimant and the county; and when proof is presented
    of the propriety of the claim, it also contemplates a fair decision upon the ac-
    counts thus presented.   When this is done, and items are honestly rejected, the
    court does not interfere by issuing the *writ of mandamus.*
But when the board of supervisors refuse to examine the accounts, for some cause
    other than errors in the accounts, or want of proof as to the items, then the
    writ may be properly issued to compel the board *to proceed with an examination
    and auditing of the accounts.*
The Revised Statutes makes all expenses necessarily incurred by any *county officer*
    in executing the duties of his office, in cases in which no specific compensation
    therefor is provided by law, a county charge; and all such accounts *shall be au-
    dited by the board.*

People *ex rel.* Hasbrouck agt. Board of Supervisors of New York.

Therefore any resolution or ordinance, passed by any board of supervisors, to make anything a prerequisite to their performing the duty of auditing such accounts, is without authority and nugatory.

*New York Special Term, June,* 1861.

APPLICATION for a mandamus against the board of supervisors of the city and county of New York.

INGRAHAM, JUSTICE.—The relator applies for a mandamus to the board of supervisors, directing them to audit and allow certain claims and accounts against the county of New York, which he has presented to them and which they have rejected.

These bills amount together to about $1,400, for various articles of stationery, for printing and binding done for different departments of the government, mainly connected with the courts. Among them are bills for printing calendars for the supreme court, and for printing and stationery furnished the county clerk; for printing indictments, subpoenas, and other necessary blanks for the district attorney's office; for binding docket of judgments and calendars, and printing declarations of intentions and other papers for the court of common pleas; for stationery, &c., furnished to the clerk of the superior court, and for printing blank convictions, and copies of sentences, and other matters for the court of sessions. These accounts also contained a few charges for stationery, such as wafers, rubber bands and pens, amounting in all to a very small sum, and were furnished during the year 1859.

In all cases the accounts are certified by the clerks of the courts for which the work was done; and the account for work done for the district attorney's office is certified to by the assistant district attorney.

A very casual examination of the accounts will satisfy any one that the purposes for which the work was done were matters absolutely necessary for the transaction of the business of the courts, and without which great trouble and difficulty would be produced.

And it is equally apparent that any delay in the doing of most of the work would be productive also of great inconvenience in the administration of justice.

For instance, the calendars of the courts are seldom completed until two or three days before the commencement of the court.

It is necessary that these calendars should be prepared for the use of the courts, at the commencement of the terms, or they would be comparatively useless.

So also the printing of indictments for the district attorney are equally necessary to transact the criminal business of the county, and unnecessary delay in furnishing them might, and probably would, seriously incommode grand juries while in session.

Similar remarks might be made as to the other charges in the accounts; and the fact is also equally apparent, that except for the public use, the procuring of these papers could answer no other purpose than to furnish waste paper.

The committee of the board of supervisors of 1859, to whom these bills were submitted, neglected to make any report thereon. In 1860 copies of the accounts, duly certified, were again submitted to the board of supervisors for that year, and on the last day of that year the committee reported a resolution, which was adopted by the board, rejecting the accounts because they were not a legal charge against the county.

The reason given by the committee in their report for the adoption of their resolution was, that an examination of the relator's books would have shown him that these articles had been supplied to the clerks for their own private use, and not to the county; of what use blank indictments for murder, manslaughter, rape, &c., calendars of the courts, blank convictions of criminal offences and subpœnas, could be to the clerks of the courts in their individual capacity, it is difficult to imagine. It is very certain they could be used for no other purpose than the public use to

which they are usually applied, and the official certificates of the heads of the various departments for which they were furnished show that they were intended for the public use, and not for private peculation.

So far, therefore, as the facts are disclosed before me, no good reason is shown why the board of supervisors should not have audited these accounts. In doing so they could have rejected all items not intended for public use, and if overcharged could have reduced the charges therefor; but to some extent the auditing was required by law, unless there is some legal cause shown why the board could refuse so to do.

Various reasons are stated by the counsel for the board to justify the course they pursued, and to entitle them to a denial of this application.

The first ground on which the respondents oppose this application is, that no requisition was made upon the board of supervisors before these articles were furnished, as required by an ordinance of the respondents, which contained a section as follows :

"No payment shall be made for bills incurred by any court or county officer in the purchase of supplies, unless a requisition, duly specifying the several items, shall have been made to the board of supervisors previous to the purchase," &c.

It may well be doubted whether printing of calendars for courts, or blank indictments for the courts and district attorney, can be included under the term of " purchase of supplies," or whether the doing of work for such purposes can be called a purchase of articles as stated therein; and if not, then there was no necessity for such a requisition.

But the principal question in regard to this resolution or ordinance is, whether the board of supervisors can make such a regulation in regard to expenses which are by law made a county charge.

That in many instances it would create trouble to the

courts and delay in the proceedings of the courts is apparent, and such difficulties have in some instances heretofore been experienced. The calendars of the courts are not ready for printing until three or four days before the sitting of the court, and often the board does not meet during that time; and on one or more occasions the calendars have not been prepared for some time after the commencement of the court.

The Revised Statutes (*5th ed.*, *3d vol.*, *p.* 902) makes all expenses necessarily incurred by any county officer in executing the duties of his office, in cases in which no specific compensation therefor is provided by law, a county charge (§ 3;) and by § 10 all such accounts shall be audited by the board. In such cases I doubt the authority of the board, by any resolution or ordinance, to make anything a prerequisite to their performing the duty of auditing the accounts.

The statute creates the liability and imposes on the head of the office the duty of ascertaining the necessity of the expenditure; and in cases relating to the public business such necessity is not to be judged of by the board, but by the officer or court who directs the work to be done.

The resolution was, no doubt, passed with good motives, and will operate to prevent improper expenditures in cases where it can be made operative; but I do not think it can be used to avoid the payment of expenses necessarily incurred in the advisaries of the courts, which by law are made a county charge. In such cases, if properly ordered, it is the duty of the board of supervisors to audit the same, whether a previous requisition has been made therefor or not.

I do not, in these remarks, refer to the purchase of articles which the board of supervisors have permitted officers to procure, at public expense, for the convenience of their business, or to any charges for articles so used, which are not by statute expressly made a county charge. In regard to such accounts, the ordinance is proper and legal, and

may be enforced. Of these items there are so few in the bills, which form the subject matter of this application, that any further opinion on that question is unnecessary.

It is contended that the power to pass such an ordinance was conferred by the act of 1857, p. 285, vol. 2.

There is nothing contained in that act applicable to this matter, except the 5th and 7th sections.

The first prohibits the payment of money, unless an appropriation had been previously made for the purpose, and the other provides that no payment beyond legal claims shall be allowed by the board. Neither of these relieve the board of supervisors from the duty of auditing the account, or justify the passage of the ordinance referred to. After the account of the claimant is audited, these provisions may furnish good reason why a claim should not be paid, but are no excuse to relieve the board from the other duty.

It is only after the account has been audited that the claimant can take measures to compel the payment; and it is then that the objection is to be made on the ground relied upon in either of these sections, if they are applicable. Whether any appropriation has been made or not, is not a material inquiry at the present time; nor was it necessary for the relator to show that such an appropriation had been made in order to maintain this application.

I have already referred to the objection that the articles were furnished at the request of the clerks of the several offices, &c., who show no authority therefor.

The certificates of the county officers themselves, as to the necessity and the furnishing of the work, &c., must have been overlooked, for they are attached to all the accounts submitted to the board.

The last objection is, that, inasmuch as the board of supervisors have rejected the whole account, the relators are remediless. It might be said that in this case the board did not audit the account and reject items in it, but refused

to audit it because a requisition had not previously been made upon the board.

The refusal to audit an account, for a cause which cannot be sustained, does not allow the application of the rule as stated by the respondents' counsel. This view disposes of this part of the case, even if there were cases which went so far as to uphold the position assumed by the respondents' counsel. But none of these cases that I have examined hold that the board of supervisors may reject the whole of an account without auditing or examining it.

In *Brady* agt. *Supervisors* (2 *Sand.*, 471, *affirmed in* 6 *Seld.*, 260) the only point applicable to this case held by the court was, that accounts for county charges should be audited by the board of supervisors, and could not be sued for by action.

In *People* agt. *Supervisors* (9 *Wend.*, 508) it was merely held, that in auditing an account, they might reject items not sufficiently proven.

*The People* agt. *Supervisors* (12 *Barb.*, 446) holds that the board must act when a duty is imposed upon them, and if they do not a mandamus will be issued, but only to compel them to act.

In *People* agt. *Supervisors of Fulton* (14 *Barb.*, 52) it was held that the writ should issue where the board refuses to act, but not to control them as to the amount they should allow.

In *Supervisors* agt. *Briggs* (2 *Denio*, 26) it was held that a mandamus would not lie where the board had made an allowance.

And in *People* agt. *Supervisors of Livingston* (26 *Barb.*, 118) it was held that it was the duty of the board to audit an account, but the court would not interfere with their decision as to the number of days allowed in the account.

From this examination of these cases it will be seen that none of them hold that the board of supervisors may refuse to audit and examine an account, but only that when they do audit an account and reject some charges in it, the court will not control their action.

The law provides for the action of the board in a judicial character, as deciding between the claimant and the county; and when proof is presented of the propriety of the claim, it also contemplates a fair decision upon the accounts thus presented. When this is done, and items are honestly rejected, the court does not interfere by issuing the writ of mandamus. But when the board of supervisors refuse to examine the accounts, for some cause other than errors in the accounts, or want of proof as to the items, then the writ may be properly issued to compel the board to proceed with an examination and auditing of the accounts.

Sufficient proof has been furnished in this case by the certificates of the county officers to call for the action of the board of supervisors; and, as the board of supervisors refused to audit the bills when so presented, the writ must be issued.

Motion for mandamus, directing the board to audit the account, granted.