## SUPREME COURT.

### THE PEOPLE *ex rel.* SAMUEL PLUMB agt. THE BOARD OF SUPERVISORS OF CORTLAND COUNTY.

If a *board of supervisors* disallow an account presented to them to be audited as a county charge, on the ground that *they have no power to allow it*—that the sta-. tute does not authorize the allowance; this precludes the *examination* contemplated by the statute under which the board act in the settlement of accounts, and the court can control the action of the board, in reference thereto, by *mandamus.*

It is otherwise where the board of supervisors enter into an *examination* of such accounts, and reject (or allow) them; they thus exercise their legal *discretion*, and their decision becomes *final.*

The *commissioners of excise* of a county are not, under the statute, limited in their services to *ten days (at $3 per day.)* This limitation is expressly confined to the time they shall spend in their meetings for the purpose of granting licenses.

It is their duty to *prosecute for penalties incurred*, and the members of the board have the right to charge for the time spent in the performance of that duty; and where they present their accounts to the board of supervisors, properly made out and verified, it is the duty of such board to receive and act upon them. If they refuse to do this, the authority of this court may be invoked to compel them.

*Cortland Special Term, August,* 1861.

MANDAMUS. The relator was one of the commissioners of excise of Cortland county. At the annual meeting of the board of supervisors of Cortland county, in 1860, he presented two bills to the board, for audit and allowance; one for $33, for eleven days' service—ten days in meeting the board to grant licenses, and one day to make report to the board of supervisors; the other for $143.62, for forty-two days' service performed as such commissioner of excise, in

prosecutions for violations of the excise law, and $17.62 for disbursements incurred by him in such prosecutions.

The board of supervisors audited the first bill at $30 for ten days only, and the second bill at $17.62 for disbursements only, and claimed that the relator was only entitled to pay as an excise commissioner for ten days' service in any one year, at $3 per day, besides the disbursements necessarily expended by virtue of his office. This mandamus was brought to compel the board of supervisors to audit and allow the balance of said bills. The alternative mandamus was directed to " The Board of Supervisors of Cortland county," and was served upon their clerk only. Motion for a peremptory mandamus.

A. P. SMITH, *for the relator.*
HORATIO BALLARD, *for defendants.*

PARKER, Justice. This is an application for a peremptory mandamus to compel the defendants to allow the account of the relator, for services as one of the commissioners of excise of Cortland county.

An alternative mandamus was allowed and issued, which sets forth that the relator presented to the defendants, at their last annual meeting, an account, duly verified, for eleven days' service by him as such commissioner of excise, for the year 1860, and requested them to audit and allow the same at the sum of $33, but that they refused so to do; but did settle and allow the same at the sum of $30. And also, that at the same annual meeting, the relator presented to the defendants another account, in due form, and properly verified, for forty-two days' other services by him as such commissioner, during said year, and $17.62 disbursements, and requested them to audit and allow the same at the sum of $126 for said services, and $17.62 for said disbursements, but that they refused so to do; but did settle and allow the same at the sum of $17.62 for said disbursements, re-

fusing to allow anything for said forty-two days' services. That both the eleven days' service charged in the said first account, and the forty-two days' service charged in the said second account, were actually and necessarily performed by the relator as such commissioner of excise, and the said sum of $17.62 necessarily expended by him in the discharge of his duties as such commissioner, during the said year.

To this writ the defendants return, that the relator did present his bill for services claimed to have been rendered as such commissioner, for eleven days' service, giving a copy of the bill, at $30, being for ten days' attendance of said relator at the board of commissioners of excise, as charged in said bill, disallowing $3 charged therein for one day making report to supervisors. Also, that the relator did afterwards, and during their session, present another bill, as set forth in the writ, (giving a copy of the bill in detail, consisting of services, from time to time, in attending justices' and other courts, traveling to get and serve subpœnas, and consult counsel, and attend to complaints, and settle with treasurer, and of expenditures in so traveling, and in and about various suits,) and that they allowed said bill at $17.62, for the disbursements charged therein, and that " the residue was examined, considered, rejected and not allowed by the said board of supervisors." The return further proceeds to deny the performance of the services, and charges in the bill, except as allowed by them ; and that the relator performed more than ten days' service, by virtue of any requirement of any law of this state, or that any part of the second bill is legally chargeable against the county of Cortland.

The relator put in a plea to the return, reiterating the allegations of the writ above mentioned, and averring that no objection was made by defendants to either of said bills, except that defendants were not authorized to allow the relator for more than ten days' service, and that the por-

tions of the bills not allowed were rejected for the reason that in the opinion of the defendants the law only authorized them to audit and allow the relator's bill for ten days' service as such excise commissioner, and for no other reason ; also alleging that the second bill was audited and allowed at $99.63, but subsequently reconsidered and allowed at $17.62, as above stated.

To this plea the defendants put in a reply, admitting that the two bills were audited and allowed at $30 and $17.62, respectively, and that the relator was one of the commissioners of excise of said county, and denying every other allegation in the plea.

In connection with these pleadings, the parties submit a copy of the proceedings of the board of supervisors of Cortland county for the year 1860, in which appears the following : " Mr. Kingman offered the following preamble and resolution, which were adopted : Whereas it appears that a bill of Samuel Plumb (one of the excise commissioners of Cortland county) has been audited by this board for $99.63, for services and disbursements, which bill is contrary to the express provisions of the statute, which says, that ' in no case shall a greater compensation be allowed than three dollars ($3) per day, for ten days,' therefore resolved, that the said bill be referred back to this board for further action."

The bill was accordingly taken from the file and reviewed by the full board. " Mr. Kingman moved that the said bill of Samuel Plumb be rejected. By consent, the vote on the resolution was laid over until to-morrow morning, at nine o'clock." The minutes of the next day proceed : " The board took up the business of reconsidering Samuel Plumb's bill, which had been laid over by consent to this hour. Mr. Spencer offered an amendment to Mr. Kingman's resolution, previously offered, to reject the bill ; that this board audit Mr. Plumb's bill at the sum of $17.63, that being the amount of his disbursements over and above his

credits, as shown by his bill. The amendment was adopted. The question then recurred upon the original resolution as amended, which was adopted."

The case is thus brought before the court upon these pleadings and this evidence, at special term, and must be regarded as tried by the court upon waiver of a jury by the parties. As the case is presented upon the pleadings and evidence furnished by this extract from the proceedings of the defendants, I think it fairly appears that the portions of the bill rejected were disallowed on the ground that, in the opinion of the defendants, the statute prohibited their allowance; or, as stated in the resolution, the express provision of the statute is, that "in no case shall a greater compensation be allowed than three dollars per day for ten days." Whether they were rejected on this ground or not, was a fact properly in issue, and, it seems to me, the only issuable fact of those put in issue by the pleadings in this proceeding. It is of no consequence here, whether the time charged for, was *actually* or *necessarily* spent by the relator in the services alleged, or not. If the defendants were not satisfied as to either of those facts, and rejected the charges for such reason, their decision was final, however the facts might be; so that those facts cannot be inquired of here. But if the defendants rejected these items on the ground that the statute prohibited their allowance, that view precluded the *examination* contemplated by the statute under which the board of supervisors act in the settlement of accounts against their counties. That statute provides that boards of supervisors of each county in the state shall have power, &c. "to examine, settle and allow all accounts chargeable against such county." (1 *R. S.*, 367, § 4, *sub.* 2, 1*st* ed.) That is, in regard to accounts which are of *a kind* chargeable against their counties, they are to examine and decide whether they have been actually and properly incurred, and their decisions in these respects are final. (9 *Wend. R.*, 508;

26 *Barb.*, 118; 2 *Sandf. S. C. R.*, 472; 21 *How.*, 117.) Their jurisdiction in regard to accounts is limited to such as are by law chargeable to their counties. If they allow accounts which are not legally so chargeable, their decision is not only not conclusive, but of no force or validity. (*People ex rel. Kelly* agt. *Haws*, 21 *How.*, 117.) And on the other hand, if they decide that an account, which is legally chargeable against the county, is not so, and therefore reject it, their decision is of no binding force, and they may, notwithstanding, be compelled by *mandamus* to examine the account upon its merits, and reject or allow it, according to their judgment in that view of it. (*Hall* agt. *Supervisors of Oneida*, 19 *J. R.*, 259.)

In the case last cited, the court say : " The distinction recognized by us is, that when the inferior tribunal has a discretion, and proceeds to exercise it, we have no jurisdiction to control that discretion by *mandamus*. But if the subordinate public agents refuse to act, or to entertain the question for their discretion in cases where the law enjoins upon them to do the act required, it is our office to enforce obedience to the law by *mandamus*, in cases where no other legal remedy exists." And after showing that " the question raised before the board of supervisors was not, whether the applicant claimed more than a reasonable compensation for his services, but whether the account was legally chargeable against the county," and that " the supervisors denied that he had any legal claim which they were bound to audit and allow," the court proceeds to say : " Now this shows clearly, that the supervisors did not entertain the question whether $30 or any other sum was a reasonable allowance for the services rendered. That would have been a matter for their discretion, over which we exercise no control. The supervisors acted upon the principle that the applicant *had no legal claim*. * * If it be a legal claim, then we have no doubt of our jurisdiction to instruct and guide the supervisors in the execution of their duty,

by *mandamus;* not to control their discretion in judging what is a reasonable compensation for such services, but to compel them to admit the claim as a county charge, and to exercise their discretion as to the amount." This view is fortified by the case of *The King* agt. *The Justices of Kent,* (14 *East.,* 395,) in which Lord ELLENBOROUGH said : "If the justices had rejected the application in the exercise of the discretion vested in them by the legislature, the court would not interfere ; but if they had rejected it on the ground now stated, *that they had no power to grant it,* the court would interfere so far as to set the jurisdiction of the magistrates in motion, by directing them to hear and determine upon the application."

In the case at bar, as already stated, it appears that the defendants rejected the disallowed portions of the account on the ground *that they had no power to allow them.* If they might legally have allowed them, *they refused to entertain the question of their discretion;* so that the case is made to turn upon the question whether, as the defendants assumed, the commissioners of excise are limited in respect to the services which they are to perform and charge for to ten days. I do not think they are ; but that the act plainly contemplates that they shall not only control the granting of licenses, but also that they shall bring suits for such of the penalties as are not specially required to be sued for by other persons. The limitation is expressly confined to the time they shall spend in their meetings for the purpose of granting licenses.

The 22d section requires that the penalties imposed by the act, except those provided for in sections 8, 15 and 19, shall be sued for and recovered *in the name* of the board of commissioners of excise. There is in the act no other provision made for the bringing of the suits contemplated by this section, except the one in section 30, which is as follows : "In case the parties or persons whose duties it is by the provisions of this act to prosecute, shall neglect

to prosecute for any penalty provided by this act, for the period of ten days after complaint to them that any provision of this act has been violated, accompanied with reasonable proof of the same, any other person may prosecute therefor in the name of the board of commissioners of excise." From these two sections, constituting as they do all the provisions of the act in regard to the duty of prosecuting for the penalties contemplated by the 22d section, the necessary implication is, that the board of commissioners of excise are charged with that duty, and that where suits are to be brought *in their name*, they are to be brought *by them*, except in the case provided for in the 30th section. If they are to bring suits, they are to be entitled to receive $3 per day for the time necessarily spent in the performance of this duty, according to section 5, as well as for that spent in granting licenses. The provision of section 5 on this subject is as follows : " No fee or reward shall be taken by any board of excise, or by any member thereof, for any license to keep an inn, tavern or hotel, or to sell strong or spiritous liquors, *or for any service required of such board;* nor shall any compensation be retained by any such board, or by any member thereof, or by any clerk thereof, out of the excise money, but the whole amount thereof shall be paid over to the county treasurers for the use of the poor in the several counties ; but the persons composing such boards of excise shall be entitled each to receive the sum of three dollars per day for services actually performed, *to be allowed and paid in like manner as other county charges;* and no other or greater compensation shall be allowed."

I think, therefore, the relator is not confined in his right to charge *per diem* for services, to the ten days to which the board is restricted in the granting of licenses. It is the duty of the board to prosecute for penalties incurred, and the members of the board have the right to charge for the time spent in the performance of that duty ; and where

they present their accounts to the board of supervisors, properly made out and verified, it is the duty of such board to receive and act upon them. If they refuse to do this, the authority of this court may be invoked to compel them.

I think, therefore, the relator is entitled to a peremptory mandamus directing the defendants to examine the accounts *upon the merits.* But as was said by Lord ELLENBOROUGH, in *King* agt. *Justices of Kent,* (*supra,*) I " do not, by granting this mandamus, at all interfere with the exercise of that discretion which the legislature meant to confide to the " board of supervisors. I only say, that they have a discretion to exercise in deciding whether the relator has performed the services, and if so, whether the whole or any part of them ought to have been performed or ought to have been omitted, and consequently whether the account shall be allowed in whole or in part, or disallowed in whole or in part. To such effect must be the command of the writ.

I may here remark, that I do not agree with the defendants in the position taken by them, that the action does not lie against the *board of supervisors*, but should have been brought against the supervisors "individually, specifying in the process, pleadings and proceedings, their name of office," pursuant to 2 *R. S.*, 474, § 96, 1*st ed.* This is not an action against the " officers named in the preceding 92d section," to which the provision of the 96th section refers. It is made the duty of the *board of supervisors* of each county to examine, settle and allow all accounts chargeable against the county, as above shown. And it is to compel a performance of this duty by the *board*, and not by the supervisors individually, that this action is brought. Hence it is properly brought against the *board.*

A peremptory mandamus must issue, commanding the defendants to examine the said accounts, with the view above stated. The relator is entitled to his costs of this action.