NEW YORK PRACTICE REPORTS. 53

People agt. Board of Supervisors of Cortland County.

# SUPREME COURT.

## THE PEOPLE, *ex rel*. F. G. KINNEY agt. THE BOARD OF SUPERVISORS OF CORTLAND COUNTY.

The *board of supervisors* of a county have no power nor authority to *contract in advance for the official printing* by the several county officers of the county. (*See to the same effect, People ex rel. Hasbrouck* agt. *Board of Supervisors of N. Y.*, 21 *How.*, 322; *S. C.*, 22 *How.*, 71.)

They have no power or authority to direct the *clerk* whom he shall employ to do his official printing; nor to direct him, in advance what price he shall pay or agree to pay therefor. That trust has been reposed, by the people in him, and what he does as such officer is entitled to respect as an officer of the county.

If the *statute* prescribes the sum to be received for the services of a county officer, the board of supervisors are required to allow the bill according to such statute. If the sum is fixed by a binding *contract*, the board is equally bound to allow the bill in accordance therewith. As to such services, the contract of the officer, in the name of the county, is binding upon the county.

The *clerk* and *surrogate* of the county of Cortland, contracted with the *relator* to do the printing which he did for them, at a specified price; it was legitimate and proper printing, and necessary to enable them to perform the duties of their office; the contracts were within the scope and authority of those officers and the sum agreed to be paid, was no more than a reasonable compensation for the services:

*Held*, that the board of supervisors of that county was not at liberty to interfere with those contracts, but should cause to be levied and paid the amount due thereon.

There was no contract made with the *relator* for the printing done for the *sheriff*, the latter merely requested the *relator* to do it. He did so, and charged therefor strictly what the statute prescribed for such services:

*Held*, that the board should have allowed the amount without any deduction. It had no power to say it would not allow him to collect so much, as that would be coming in direct conflict with the statute.

Where the board contracted in advance, for all the printing required by the county officers, for the coming year, at a fixed price with a certain individual, and the board did not pass upon the account of the sheriff, otherwise than to ascertain how much it would come to, allowing for the different items the prices specified in their general contract:

*Held*, that such general contract had no binding force upon the board; it should not have been taken as a guide in its action upon the account, especially to the exclusion of the statute.

The newspaper of which the *relator* was proprietor, was one of the papers duly

selected to perform the service of printing the *session laws.* There being no con-
tract with him as to his compensation, he became entitled to the compensation
the law prescribed. And the statute of 1869 was to be the guide in determining
the compensation to be allowed, notwithstanding part of the services were per-
formed before the act was passed. The board was in error, therefore, in re-
ducing his amount for such service, to less than the minimum sum fixed by the
act of 1869.

After action by the board on the relator's whole account, it caused to be made an
order on the treasurer of the county. directing him to pay the *relator* the amount
allowed him by the board. The *relator* refused to receive it *in full* for his claim,
and so notified the board, but retained the avails of the order in his hands after
tender back of the order which was refused, and commenced these proceedings
for the balance due him:

*Held,* that the *relator* was not thereby estopped from disputing the correctness of
the action of the board. The application of the relator was to readjust the
whole claim and treat the money in his hands as a payment. It was no accord
and satisfaction, for the reason that the relator refused to receive it in full.

*Cortland Special Term, May,* 1870.

THIS action having been tried before the undersigned, at
a special term, held in and for the county of Cortland, on
the 19th day of May, 1870, a jury trial having been waived
in open court, and having heard the proofs and allegations
of the parties, do 'find the following facts and conclusions of
law, to wit:

On the 21st of November, 1868, the board of supervisors
of said county, passed a resolution that its clerk should for
two weeks after that date, receive sealed proposals for
printing per folio all blanks and the court calendars neces-
sary for the use of the county judge and surrogate, also for
district attorney, sheriff, and county clerk; and that each
of the said officers be.required to certify and report to the
board, the number of folios of printing that should be done
for them, respectively, to supply them with such blanks.
That the said clerk on the 8th of December, 1868, at 2 p.
m., open said sealed proposals in the presence of the board,
which should award the contract of such printing to the
lowest responsible bidder. The clerk gave notice and re-
ceived proposals in pursuance of said resolution. Three
proposals were made, and opened on the 8th of December,
1868, among which was one made by B. B. Jones, that he

would print the blanks for the use of the several officers for thirty cents per folio for the first hundred, and twelve cents per folio for each hundred after the first; court calendars for ninety cents per page in proper binding. That proposal being the lowest was accepted. The board adopted a resolution that its clerk be requested to enter into a contract with the said Jones, to furnish the blanks for the use of the several county officers, and also the court calendars, in accordance with his offer, and notify the several county officers of said contract, and request them to give all orders for what blanks they may need in their respective offices to the said Jones, a reasonable time before they were needed. The clerk gave notice to the said officers in accordance with said resolution. The relator made no proposition to do this printing. On the 20th of November, 1868, the said board duly elected the Cortland county *Standard,* the paper of which the relator was proprietor, as one of the county papers to publish the session laws of 1869. There was no agreement between the relator and said board as to what he should have for publishing the said laws. The relator had made no proposition what he would do it for. During the winter, spring and summer of 1869, the relator duly published the laws of that year of which there were 885 folios. (The judge here enumerates the various items of the account of the relator against the county.)

The relator in his said account charged for the printing done under the several contracts aforesaid, according to the contract prices. That which was done at the request of the sheriff before May 11, 1869, was charged according to the act of 1859; that which was done since, under the act of 1869. The aforesaid printing done was worth what the relator charged, according to the usual rates charged by printers.

He charged in his account for printing the session laws $442 50, which was at the rate of fifty cents per folio, and his account was made up by adding the said $442 50 to the aforesaid $357 70, making in all $800 20.

The relator presented this account to said board at its annual meeting in November, 1869. The account presented was verified, and no objection was made by the board that it was not duly and properly verified. The account was referred to a committee of the board for examination. While the committee had it under consideration, the board on the 17th of November, 1869, adopted a resolution that all the printers of the county who had printed blanks and court calendars for any of the officers of the county, should not be allowed any more for such printing than the price agreed upon in the contract made with Jones. Afterwards, the committee reported in favor of auditing the acccunt at $313 10, without stating what items or parts of items of the account were rejected or allowed. The action of the committee was approved by the board. The committee or the board did not notify the relator there was any objection to the account or any part thereof. He was not called upon to explain or to give evidence in regard to the account or any item thereof.

On the 11th of May, 1869, an act was passed allowing printers for printing the session laws not to exceed fifty cents for each folio, and not less than thirty, as the board should determine. The relator printed 885 folios of session laws, which, at thirty cents a folio, would be $265 50—leaving only a balance of $47 60, to pay for the other printing, as allowed by the board. From this I find the board had not allowed the relator what he was entitled to for printing the session laws. I find the relator printed 118 pages of court calendar, which at ninety cents a page (the price specified in the Jone's contract) would amount to $106 20, and as near as I can ascertain, the other printing done by the relator, aside from the session laws, according to the prices in the Jone's contract, would amount to $107, or thereabouts. From this I find that the board in auditing the relator's account had allowed him for printing the session laws $100, and for the other printing, according

to the Jone's contract. The board caused an order to be drawn on the treasurer of the county, in favor of the relator, for the amount thus allowed him, in full of his account, and caused one of its members to deliver the same to him. The relator received it, but at the same time, said he would not receive it in full of his claim, and would commence a proceeding at once to compel the board to allow the whole account. He aferwards tendered back to the person of whom he received it, the said order. He refused to receive it. The relator then commenced this proceeding. The relator received the avails of the order, and still has them, and has not paid them into court. The balance rejected would be $487 10.

My conclusions of law are that the relator is not estopped from disputing the correctness of the action of the board by having received and retained the order and the avails thereof in the manner he did. It does not constitute an accord and satisfaction. It is not seeking to recover a split up claim in another action.

That the relator is entitled to have that portion of his account which was for services done under contracts with the clerk and surrogate, audited and allowed by the board at the contract prices; and that portion of the account which was for printing done at the request of the sheriff and clerk of the board of supervisors, should be audited and allowed, as charged in the account, at the rates fixed by the acts of 1859 and 1869. The printing done for those four officers amounts, according to the contract prices and according to those acts, to the sum of $357.70. There should be deducted from that, the money received by the relator on said order, which was $313.10, which would leave a balance of $44.60. That the relator is entitled to interest thereon from the first of February, 1870, to the 19th of May, 1870, the date of this decision, which is 93 cents, which added to $44.60, amounts to $45.53, which the relator is entitled to be allowed and have audited. That the relator is en

titled to have the said board pass upon his account for printing the session laws, and allow him for printing 885 folios at not less than thirty cents a folio, and not more than fifty, as they may determine, and when the amount is so audited and allowed for printing the session laws, the board shall add the amount thereof to the aforesaid $45.53, allowing interest thereon from the 19th of May, 1870, and cause the whole amount to be levied and collected and paid to the relator, with costs of this proceeding to be taxed. I therefore order, adjudge and direct that the relator have judgment accordingly.

And it is further ordered, adjudged and decreed that a peremptory mandamus issue, directed to the said board of supervisors of Cortland county, requiring them at their next annual meeting to proceed and audit and allow the claim of the relator for printing the session laws, according to the foregoing order and judgment, and when so audited, to levy and collect the amount thereof, together with the above-mentioned $45.53, with interest thereon from the 19th day of May, 1870, and the costs of this proceeding, as they may be taxed.

Dated May 19, 1870.

W. MURRAY, JR.,

*Justice of the Supreme Court.*

A. P. SMITH and M. GOODRICH, *counsel for relator.*
M. M. WATERS, *counsel for defendant.*

MURRAY, J.—In December, 1868, the board of supervisors of Cortland county, contracted in advance for all of the printing required by the county officers of that county for the coming year, at a fixed price with one Jones. The county officers did not regard that contract binding upon them, and each employed the relator to do his official printing. The clerk and surrogate agreed with him as to the price of the printing done for each of them. The price agreed

.upon was reasonable and according to the usual rates charged by other printers for the like services, but more than Jones had contracted with the board to do it for. At the annual meeting of the board in November, 1869, the relator presented his bill for printing done for the clerk and surrogate, according to the price agreed upon between him and them and the printing done for the sheriff, according to the rates by statute, and for printing the session laws. The board regarding the contract it had made with Jones for the printing of that year binding upon those officers, audited and allowed the relator's bill according to the rates prescribed in the Jones contract. If the board was right as to the binding nature of that contract, it was right in allowing the bill according to it. The relator knowing of such contract, and agreeing to run the risk of getting his pay according to the contracts made with such officers, stands in no position by which he could be protected from the consequences of such contract.

To provide in advance for the official printing by the several county officers, is no part of the duty of the board of supervisors. The board, in performance of its duty, is governed by the statute. It has no authority or power except what is derived therefrom. The statute does not authorize or empower them to contract in advance for such printing. (21 *How.*, 322; *S. C.* 22 *How.*, 71, *General Term.*)

It leaves those officers to perform their duties, under the direction of the statue, untrammeled and uninfluenced. They take an official oath for the faithful performance thereof, and are responsible to the power that gives them their official existence, for the manner in which they do it, and are liable to impeachment in case they corruptly neglect or refuse to perform their duty. The supervisors have no supervisory power over them. They have no power or authority to direct the clerk whom he shall employ to do his official printing. They have no power to direct in advance what price he shall pay or agree to

pay. That trust has been reposed by the people in him, and what he does as such officer is entitled to respect as an officer of the county.

But the board occupy a very important position. No sum of money can be collected of the people for the payment of bills, except by its action. All bills against the county are to be presented to and audited by it. Unless the sum for such services be fixed by law, authority, custom, or binding contract, its members have to consider and pass upon such charges and allow such sum as in their judgment is right and proper. In such cases their judgment cannot be interfered with by any court on an application for a *mandamus*. In those cases they have a discretion, and no court will interfere by *mandamus* to direct how that discretion shall be exercised. (1 *Cow. R.*, 417; 30 *How.*, 173; 33 *Barb.*, 603; 26 *Barb.*, 118; 1 *Hill.*, 362.)

If the statute prescribes the sum to be received for such services, the board are required to allow the bill according to such statute. It has no discretion over it. The legislature has passed upon the question, and the board can only carry out its requirements. If the sum is fixed by a binding contract, the board is equally bound to allow the bill in accordance therewith. In this case the clerk and surrogate contracted with the relator to do the printing he did for them at a specified price. The several contracts of the clerk were for printing necessary to enable him to perform the duties of his office. It was legitimate and proper printing for him to procure to be done. (21 *How.*, 322; 22 *Id.*, 71.) As to such printing, his contracts in the name of the county, were binding upon the county. (3 *Wend.*, 193.) The clerk could have paid for the printing himself and presented his bill for the money paid. The board would have been required to allow his bill for the money paid. (18 *John. R.*, 241.)

He could procure the printing done on credit of the

county, as is usual, and the person doing it can present the bill and be entitled to be allowed the price agreed upon between him and the clerk. The relator having been employed to do his printing at an agreed price, it being within the scope of the clerk's autority, the sum agreed to be paid being no more than a reasonable compensation for the services, the board is not at liberty to interfere with that contract, but should cause to be levied and paid the amount due thereon. If a dealer or mechanic makes a contract with a public officer, in the name of the county, as to a matter within the scope and authority of that officer, and a contract he had a right to make, it is binding upon the county, and must be performed the same as if it was between two private individuals. It is insisted on the part of the board, the Jone's contract was much more favorable to the county than the relator's contract, and the clerk, knowing what Jones was to do the printing for, had no right to make a contract agreeing to pay a greater sum. If it was claimed that there was a fraudulent contrivance between the clerk and the relator to cheat the county, this would be an important circumstance for consideration. I do not understand from the return and pleadings any such issue is presented; neither do I understand it to be claimed on the trial that there was any such fraudulent contrivance. It can hardly be questioned but what the parties to the transaction-acted in good faith. Indeed, the clerk testified he considered the terms he made better for the county than the Jones contract; but I think it did not turn out to be so. Fraud would vitiate the contract he made with the relator. But if there was no fraud, the fact that he agreed to give more than the Jones contract has no legal effect. It in no way changes the legal aspect of the case. The same reasoning is applicable in all respects to the contracts the relator made with the surrogate. The contracts made with him were similarly situated; the same conclusions must be had as to them.

As to the printing done for the sheriff, there was no contract as to price. The sheriff requested the relator to do it. He did it and charged for all that was done before the 11th of May, 1869, according to the law of 1859, and all subsequent to that time, according the law of 1869. The printing consisted of legal notices required by law to be published. Chap. 252 of the laws of 1859, provides that the proprietor of any newspaper may charge and collect for publishing any notice, order, &c., not more than seventy-five cents per folio, for the first insertion, and thirty cents for each subsequent insertion. Chap. 831 of the laws of 1869, passed May 11, 1869, so amends the act of 1859, as to allow the printer fifty cents per folio for each subsequent insertion. By these acts the printer is allowed to collect not more than the sum specified. He cannot be compelled to take less. The acts say he may collect that sum. The board has not the power to say it will not allow him to collect so much; that would be coming in direct conflict with the acts; it would be defying their power; that the board, I am very sure, did not design to do. Therefore, the bill for the sheriff's printing should have been allowed without deduction in this. I do not express an opinion upon the question whether the act of 1869, does not govern the charges in the whole bill for sheriff's printing, notwithstanding part of the services were performed before the act was passed. Because I understand those services performed before the act was passed were charged in the bill, according to the act of 1859, which renders it unnecessary to consider that question.

There is still another view to be taken of the action of the board upon this account, aside from the session laws, from which the conclusion is derived that the action of the board was erroneous, It did not pass upon the account otherwise than to ascertain how much it would come to, allowing for the different items the prices specified in the Jones contract; that contract had no binding force upon it;

it should not have been taken as a guide in its action upon the account. If there had been no law or contracts by which it was required to allow the different items so as to bring it under its discrection, it should have examined each of them if necessary, taken evidence, heard proofs and explanations from the relator, clerk, and others, and with the best lights they could get to guide the members of the board, determined what in their judgment was right and proper to be allowed for such services. That it has not done. Under those circumstances the board would be required to act upon the matter. (*Hull* agt. *the Supervisors of Oneida*, 19 *John.*, 259; *Plumb* agt. *the Supervisors of Cortland*, 24 *How.*, 119.) As to printing the session laws, the paper of which the relator was proprietor, was one of the papers duly elected to perform that service. There being no contract with him as to his compensation, he became entitled to the compensation the law prescribed. By chapter 831 of the laws of 1869, it is provided that for printing the session laws, the printer shall receive not less than thirty cents per folio, and not more than fifty. There were 885 folios. At thirty cents, it would amount to $265 50, at fifty cents it would amount to $442 50. The board allowed him but $100. The act of 1869, is to be the guide in determining the compensation to be allowed, notwithstanding part of the services were performed before the act was passed. The relator was entitled to be allowed not less than $265 50, and not more than $442 50, as the board should determine. Any amount over the *minimum* sum, and less than the *maxium*, was in the discretion of the board, and its determination will not be reviewed on trial like this. The board, therefore, was in error in reducing the allowance to less than $265 50. They had no power to do so in the absence of any contract with the relator. In all this, there is no doubt the board acted in perfect good faith, with the best of motives, with a commendable desire to lessen the expenses of the county,

and reduce taxation upon the people. But at the same time, when public officers are striving to protect and serve the public, they should be careful not to overlook, override, or interfere with private rights and private contracts.

After this action of the board upon the relator's account, it caused to be made an order on the treasurer, directing the amount allowed him to be paid him. The order was delivered to a member of the board to be handed to the relator, which was done. The relator refused to receive it in full of his claim, and notified the person handing it to him that he should at once commence a proceeding to compel the board to allow him the balance. He subsequently tendered back to the same person the order, but he refused to receive it. The relator afterwards received and still has the avails of the order. It is insisted, under these circumstances, the relator is estopped from disputing the correctness of the action of the board. At the close of the trial I was of that impression, but on reflection have come to a different conclusion. This in the main was a matter over which the board had no discretion; its action was unauthorized. By this unauthorized action, they allow him so much in full of his claim. It is tendered to him; he takes it, but refuses to take it in full. He tenders it back; the board refuse to receive it. He is not estopped, for the reason the board has done nothing, it has been induced to do nothing, it has lost nothing, in consequence of his receiving or keeping that order. The principle of disaffirming a fraudulent contract in actions to recover back what the party defrauded may have advanced thereon, does not apply to this proceeding. In such case, there is a contract if affirmed, the party cannot recover back. The party cannot disaffirm a contract, unless he restores the opposite party to his former condition. There is no contract in this case between the board and the relator to affirm or disaffirm. The disaffirmation of an unautorized proceeding before the board, does not require that he shall

restore all that he may have received thereon, that is, if he does not, it does not amount io an affirmance as in the case of a fraudulent contract. I can see nothing upon principle that precludes the relator, with that money in his pocket, from compelling the board to readjust his claim, and when readjusted, applying that money as a payment thereon. The principle in regard to splitting up claims, has no application in this case ; it is not sought to recover part of a claim. The application is to readjust the whole claim, and treat the money in his hands as a payment. It is no accord and satisfaction, for the reason the relator refused to receive it in full. (9 *Bosw.*, 290, 299 ; 14 *Wend.*, 100; 19 *Wend.*, 516 ; 18 *N. Y.*, 448.) The most analagous principle is in regard to appeals. The receiving of the avails of a decree in equity is no waiver of the right of appeal. *(Dyett* agt. *Pendleton,* 8 *Cow.*, 325 ; *Clowes.* agt. *Dickinson,* 8 *Cow.*, 328 ; *Higbie* agt. *Westlake,* 14 *N. Y.*, 281.) The relief established is substantially, though not precisely what is demanded in the alternative *mandamus.* Therefore, it is proper that a *mandamus* should issue to compel the board at its next annual meeting to audit and allow the relator's claim for printing for the clerk, surrogate and sheriff, as presented, deducting therefrom the $313 10 received by him, and allow him interest on the balance from the 1st of February, 1870, and to consider and pass upon his claim for printing the session laws, consisting of 885 folios, auditing and allowing him on this claim not less than thirty cents per folio, and not more than fifty cents, and determine at what it should be allowed. Then audit, allow, levy and collect the whole bill thus adjusted. The relator should be allowed costs of this proceeding.