CHARLES L. MacARTHUR AND ARTHUR MacARTHUR, RESPONDENTS, *v.* THE CITY OF TROY, APPELLANT.

*Common Council of Troy — may fix price to be paid for publication of its proceedings — 1870, chap. 598, title 2, § 3, as amended by, 1873, chap. 813 — 1869, chap. 831 — to what cases it is applicable.*

The charter of the city of Troy provides that the common council shall designate not to exceed four newspapers in which the city advertising shall be done, only by the order of the common council. September 2, 1875, a resolution was passed by the common council to the effect that it would pay for publishing its proceedings five dollars for each column thereof, and that any official paper refusing to publish them at that rate was notified not to publish them at all. In this action brought by the plaintiffs, the proprietors of one of the official papers of the city, to recover for publishing the proceedings of the common council from September 20, 1875, to March 7, 1876, they claimed to be entitled to recover the sum of seventy-five cents for each folio so published, though they had had notice of the passage of the resolution of September second.

*Held,* that although the plaintiff might have declined to publish the proceedings at the rate fixed by the resolution, yet having published them with notice thereof, they were limited to the price therein prescribed.

That chapter 831 of 1869, providing "that for publishing any notice, order, citation, summons or other proceedings or advertisements required by law to be published, not more than seventy-five cents per folio for the first insertion and fifty cents for each subsequent insertion" shall be charged, referred principally, if not altogether, to publications in actions and the like, and had no application to the case in hand.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee.

The action was brought by the plaintiffs, the proprietors of the Troy Northern Budget, one of the official newspapers in the city of Troy, to recover an amount alleged to be due for the publication of the proceedings of the common council of Troy, from September 20, 1875, to March 7, 1876.

*R. A. Parmenter,* for the appellant.

*Robertson & Foster,* for the respondents.

LEARNED, P. J.:

No proof was given upon the trial of the value of the printing done by the plaintiffs. It was assumed by them, and held by the referee, that they were entitled to "the statutory rate of seventy-five cents per folio." By the words "statutory rate" reference is made to Laws of 1869, chapter 831, which authorizes, "for publishing any notice, order, citation, summons, or other proceeding or advertisement required by law to be published, not more than seventy-five cents per folio for the first insertion, and fifty cents for each subsequent insertion after the first." This law was amendatory of an act passed April 12, 1859 (chap. 252), entitled "An act in relation to the publication of legal notices."

The charter of Troy (Laws of 1870, chap. 598, tit. 2, § 3, as amended Laws 1873, chap. 813) provides: "The common council shall designate not to exceed four newspapers * * * in which the city advertising shall be done, only on the order of the common council." Section 22 of the same title, speaking of the duties of the city clerk, says that he is to keep minutes of the proceedings of the common council, "and to report such proceedings for publication in the newspapers designated as the official papers." This last section only describes the duties of the city clerk, and does not itself require the publication of the proceedings of the common council. Section 3, as above amended, leaves it to the common council, after designating the four newspapers, to order what advertising shall be done therein. Their power in this respect is of course subject to any positive requirement of law. But we are not pointed to any positive law which requires that the proceedings of this common council shall be published.

And when we examine the language of chapter 831, Laws of 1869, above quoted, it is evident that it refers to those matters of which publication is required by law; principally, if not altogether, publications in actions and the like.

It speaks of "notice, order, citation, summons," words having a well-known meaning in actions and other legal proceedings. It adds the word "proceeding," which is to be construed in harmony with the words preceding; and "advertisement" referring principally to advertisements of legal sales. And it qualifies this by adding, "required by law to be published." This law is for the

safeguard of suitors and others who are required to make publications in the course of actions and the like. And this appears from the title of the original act, which speaks only of " legal notices ;" words which do not include proceedings of a common council.

We see nothing in this law which justifies the assumption that when the proceedings of the common council are published by their order, the publishers, without regard to the value of the services, are entitled to seventy-five cents per folio. In the case of *People* v. *Board of Supervisors* (58 Barb., 139), to which we are referred by the plaintiffs, it appeared that the printing consisted of legal notices required by law to be published. That case, therefore, does not apply.

We must, therefore, inquire as to the terms on which the work was done, or if there were no terms, then as to the value of the work. This printing was done from September 20, 1875, to March 7, 1876, and the charge is for 551⅕ folios of official minutes of the proceedings of the common council. On the 2d day of September, 1875, a resolution was passed by the common council to the effect that the board would pay for such publication five dollars for each column, and that any official paper refusing to publish at that rate was notified not to publish said proceedings. This was before any publication by the plaintiffs. And this very resolution was published by them. Now it is to be observed that section 3 of title 2 of the charter, as amended, above cited, says, that the city advertising is to be done " only on the order of the common council." There is nothing then in the mere designation of the plaintiffs' paper (with others) as official papers, March 9, 1875, which defines the work to be done by the plaintiffs. That was to be determined by the order, express or it may be implied, of the common council. And we have seen that on the second of September, before any of the work in question was done, the common council voted that it should be done at five dollars a column or not at all. The plaintiffs were at full liberty to do the work at that rate or not to do it at all. There is evidence showing that the plaintiffs knew that the rate for official papers was five dollars per column before the work was done by them, in the testimony of one of the plaintiffs. This is corroborated by the fact of their publishing the proceedings of September 2, 1875, which contained this resolution.

It is true, as the referee finds, that in the designation of the plaintiffs' paper as one of the official papers, no price is stipulated for services. But this was not necessary, since it still remained for the common council to order advertising to be done. And as they ordered this to be done, either at the price of five dollars per column or not at all, the plaintiffs, by doing the work with knowledge of these terms, accepted that rate of compensation.

Without passing on other questions raised by the defendant, we think that, for the reasons given above, the judgment must be reversed, a new trial granted, the referee discharged, costs to abide the event.

BOARDMAN and BOCKES, JJ., concurred.

Judgment reversed, new trial granted, referee discharged, costs to abide event.