THE PEOPLE OF THE STATE OF NEW YORK EX REL. AARON B. GARDENIER, APPELLANT, v. THE BOARD OF SUPERVISORS OF COLUMBIA COUNTY, RESPONDENT.

*Extradition proceedings — disbursements of a district attorney, in conducting the same, are a county charge — treaty between the United States and Great Britain of August 9, 1842.*

Where a crime has been committed, an indictment has been found, and the accused has escaped, the district attorney of the county in which the indictment has been found may properly incur reasonable expenses in efforts to procure the extradition of the fugitive from another country, and disbursements so made by him are a proper county charge. (FISH, J., dissenting.)

The provisions of the treaty between the United States and Great Britain of August 9, 1842, to the effect that "the expense of such apprehension and delivery shall be borne and defrayed by the party who makes the requisition and receives the fugitive," has no relation to expenses thus incurred by the district attorney, but simply relieves the government which delivers the fugitive from the duty of incurring or paying any expenses connected therewith.

Whether expenses incurred by the district attorney, preliminary to an application to the governor of the State for a requisition for the return of the fugitive, are or are not properly a county charge cannot depend on the regulation or directions of the department of State.

APPEAL by the relator from an order granted at the Columbia County Circuit sustaining a demurrer to an alternative writ of *mandamus*, which order was entered in the office of the clerk of the county of Columbia on the 7th day of November, 1888, and also from the judgment of said court, entered in said clerk's office on the 15th day of November, 1888.

The facts alleged are as follows : One Cadby was indicted at Columbia county in April, 1886, for forgery. Previous to that time he had fled to Hamilton, Province of Ontario, Dominion of Canada. In March, 1886, the relator, who was the district attorney of Columbia county went to Hamilton to institute extradition proceedings there against Cadby. The relator commenced these proceedings, but before Cadby could be arrested he fled from that Province to Halifax, Nova Scotia, in order to take ship for England. The relator pursued him to Halifax and there again commenced extradition proceedings. Cadby was arrested. While officers were carrying him through New Brunswick he was taken under *habeas corpus* to St. John, New Brunswick, and there was discharged about March eighteenth. Proceedings for extradition were then taken in New Brunswick, and Cadby was arrested and held. At relator's instance, on the requisition of the Governor of the State, the President of the United States demanded the delivery of Cadby, and he was thereupon delivered and finally lodged in the jail of Columbia county about June 2, 1886.

The relator presented to the supervisors a bill for his disbursements and expenses in this matter. The bill includes railroad fare, hotel bills, telegrams, meals on railroad travel, detectives' services, services of attorneys employed in Canada and services of attorneys of this State. The aggregate of which was over $4,000. None of these expenses

were made as agent either of the Governor or of the President for the purpose of receiving Cadby and bringing him to the State of New York. The relator's bill was presented to the board of supervisors and they refused to audit or allow it, or any part of it.

*Albert Hoysradt*, for the appellant.

*R. E. Andrews*, for the respondent.

LEARNED, P. J.:

The relator relies, first, on the clause in article 10 of the treaty between the United States and Great Britain August 9, 1842. (Treaties of U. S., p 320), as follows: " The expense of such apprehension and delivery shall be borne and defrayed by the party who makes the requisition and receives the fugitive." The word " party " in this clause refers to the contracting parties to the treaty, as will appear by article eleven. It is intended to relieve the government which delivers the fugitive from the duty of incurring or paying any expense. It has no reference to the question which might arise between the government which receives the fugitive and any of its officers or citizens. That clause of the treaty does not touch the question here raised.

Again, the relator urges that, by the regulation of the State Department, applications must come from the Governor of the State, and that in this State applications to the Governor must come from the district attorneys. And it appears that, when Cadby had been finally held in New Brunswick, the relator applied to the Governor, and, according to the practice after stating that, in his opinion, the ends of public justice required that the criminal should be brought to the State for trial at public expense, he stated that he was willing that such expense be a charge on the county of Columbia.

This consent of the relator, of course, refers to such expense, and only to such expense, as might be incurred by the Governor on the part of the State, or by the President at his requisition. It does not refer to expenses already paid or incurred by the relator previously. It could not refer, therefore, to any part of this bill, for the writ expressly states that these expenses were not made as agent or the like in making the demand or bringing back the fugitive. These expenses were all made as a preliminary to the application to the

Governor. Whether they are, or are not, properly a county charge cannot depend on the regulations of the executive department of the State. Prior to the action of the Governor upon the relator's application the State had incurred no expense. All that had been previously done had been done by the relator voluntarily or in the performance of the duties of his office. And the question of the liability of the county must be decided by an examination of the powers and discretion intrusted to the district attorney. No light is thrown thereon by the treaty or by the regulations of the United States or the State government relative to extradition. Indeed, as to anything done in procuring the demand from the Governor and the like, the relator is forbidden to take compensation. (Penal Code, § 51.)

There is no doubt that it was the duty of the relator to conduct the prosecution of the offense of Cadby. (1 R. S., m. p. 383, § 89.) It was one cognizable in the Oyer and Terminer of the county of Columbia. Certainly, to conduct the prosecution means more than simply to attend the trial. A district attorney would be neglectful of his duty who should omit to take any steps to secure the attendance of witnesses or the presence of the accused at the trial. The investigation whether a crime has been committed, and the labor of seeing that the accused person shall not escape, may certainly, in some cases, come within the words: " Conduct all prosecutions for crimes and offenses." This language follows that used in chapter 8, Laws of 1796, which authorized the appointment of assistant attorneys-general for several " districts " of the State, to " manage and conduct all suits and prosecutions for crimes and offenses;" Hence, undoubtedly, we have our present " district attorney." Thus it has long been the policy of the State that prosecutions should be conducted rather by a public, than by a private, prosecutor. To conduct such prosecution must require the expenditure of money. Therefore, it is provided in 1 Revised Statutes (m. p. 385, § 3) that the following shall be county charges :

Subd. 2. The fees of the district attorney and all expenses necessarily incurred by him in criminal cases arising within the county.

Subd. 9. The moneys necessarily expended by any county officer in executing the duties of his office, etc.

Now, there is no question that the *Cadby Case* arose in the county

of Columbia.   Were these expenses necessarily incurred?   The meaning of these words was passed upon in *People ex rel. Hall* v. *Supervisors* (32 N. Y., 473).   They were said to include such expenditures as were not only needful and proper as distinguished from such as are needless and improvident, but also reasonable, appropriate and necessary in the discharge of the particular official duty.   This same principle is affirmed in *People ex rel. Johnson* v. *Supervisors* (45 N. Y., 196).   It is not necessary to cite further cases.

The supervisors, in refusing to audit the relator's account and in demurring to the alternative writ, have placed themselves on the ground that these expenses were not a county charge, even if they were necessarily expended in the case of Cadby.   In this we think they were in error.

Probably it is not for us, on this appeal, to decide in detail as to the necessity of each item, as no proof on the matter is before us From the circumstances of the case, in any such criminal matter the district attorney, to a large extent, must be the judge of what expenditures are needed.   It would interfere with the course of justice if he had to decide, in every instance, when he expended money, at the peril of having the board of supervisors decide otherwise, after the public interest in the capture and conviction of the accused had subsided   (*People ex rel. Kinney* v. *Supervisors,* 58 Barb., 139.)

The defendant's counsel, in commenting on this provision for the payment of expenses necessarily incurred, cite *People ex rel. Ayres* v. *Supervisors of Fulton County* (14 Barb., 56).   But that was a claim for the payment of services rendered by the district attorney for which no compensation was provided by law.   In this case he is not asking for payment for his services, but for reimbursement of expenses. And if these expenses were necessarily incurred (as is admitted by the demurrer), there is no justice in refusing to reimburse him. The expense of prosecuting crimes committed within the county must fall on the county, and not on an officer who has been vigilant in doing his duty.   We are referred to no case by the defendant's counsel showing that such expenses as these are not a proper county charge.   And it is hardly to be supposed that in many cases in which fugitive criminals have been arrested in other States and

countries, and ultimately brought back to this State, the expense of discovering and arresting them has been borne by the district attorney of the county from his own private funds without reimbursement.

When a crime has been committed and an indictment has been found, and the accused has escaped, some one must decide whether any effort, and what effort, shall be made to capture him. We know of no other officer than the district attorney who is to decide this question. Certainly it is not one for the board of supervisors. If there is any benefit to the public in the punishment of crime, it is important that the criminal shall not escape such punishment by fleeing to another country. We should be very unwilling to say that expenses of a district attorney, honestly made in the effort to recapture in another county a fugitive from justice, were not to be regarded as necessarily incurred. It is carefully pointed out in *People* v. *Supervisors of Delaware County* (*ut supra*, 199, 200), what are the respective duties of the court and of the supervisors in regard to contingent charges against the county. And it is not on these papers our duty to determine the amount to which the relator is entitled. But he is entitled to have his bill audited in accordance with the views we have stated.

The order sustaining the demurrer must be reversed and judgment for the relator must be granted on the demurrer, that a peremptory *mandamus* issue as prayed for in the writ, with costs below and on the appeal.

LANDON, J., concurred.

FISH, J. (dissenting):

The judgment of the Special Term was right, and on several grounds should be affirmed.

*First.* The relator, as district attorney for the county of Columbia, had no call to leave the county and country and to go into a foreign jurisdiction in pursuit of a fugitive. It was no part of the duties imposed upon him by virtue of his office. It became his duty to attend the criminal courts of the county, to give counsel to and prepare the indictments for the grand jury, and to attend the trials of the indictments so found. When an indictment was found against a person, not already a prisoner, it was very proper for him to issue a bench warrant and deliver it to a sheriff directing the arrest of the

person; and from that point in the case he had no duty until the party was arrested and in custody.

He was not called upon to accompany the sheriff upon a hunt for the fugitive. The statute did not constitute the district attorney an arresting bailiff; and it did not charge him with those duties which belonged to the executive department of the State or of the United States government. The extradition of fugitives from justice from foreign countries belonged to the United States government. The people of the county of Columbia had no more interest in the return of the fugitive than had the people of any other county of the State. Because the crime was committed within that county it did not throw the burden on the taxpayers of that county to enforce the provisions of a treaty between the general government and a foreign province. The county of Columbia could make no demand for his return. If the district attorney had any duty in connection with such a case, it was only to furnish proof to the executive department of the United States that there was a proper case upon which the government should act.

When the relator got beyond the limits of the United States into Canada all the functions of his office ended. He did not carry with him the powers which he possessed while in the county of Columbia, but was nothing more than an individual, acting upon the impulses of his individual desires. If he assumed to do duty for the United States government, it became and was a matter between him and that government, not a matter for which the taxpayers of Columbia county were liable. It would be much safer to hold that the district attorney in absenting himself from the county by which he was employed, to go into a foreign country, was neglectful of his home duties. It is to be presumed that he was needed within the county for which he was elected. It does not appear how long a time he was absent in pursuit of Cadby; but assuming that he was rightfully there at all, he could continue his absence for an indefinite period, leaving the affairs at home to take care of themselves.

Upon no principle whatever can his journey into Canada be defended. As well might it be claimed that the sheriff of the county of Columbia was expected to go in person on the trail of a fugitive and attend to the execution of the requisition, as that the

district attorney of a county should so do.    When the relator sought
to prosecute the proceedings in the courts of a foreign jurisdiction,
he took an extremely comprehensive view of his duties as prosecuting
attorney for the county of Columbia.

*Second.* There was and is no liability on the part of Columbia
county to pay this bill.    There is no written statute or precedent
for it.    There certainly would be no justice in a law or precedent
which required it.

The only authority for the extradition of runaway criminals
resides in the general government, and the power and authority
comes by virtue of treaty stipulations.    The high contracting parties
may agree, as between themselves, to any terms or conditions, but
their action cannot create obligations upon any person, province or
city.    The provision in the treaty, copied in the writ, that the
expenses of reclaiming a criminal shall be borne by the party
making the application, has reference only to the parties to the
treaty ; it has no reference to the person or official who may enter
·the complaint, so that the regulation by the executive department of
the State, requiring that the application shall come from the district
attorney of the county in which the indictment is found, with his
consent, that the expense shall be charged to his county, does not
and cannot create a liability against the county.    It relieves the
State from the burden, but it casts no legal burden upon any other
locality.    And then, again, if it had the effect to fasten the expense
upon the county, it could have no reference to the personal expenses
of a traveling district attorney through a foreign country, or the
expense of litigations before foreign courts.

*Third.* A demand of this kind ought not to be enforced by the
arbitrary process of *mandamus* ; it ought not to be enforced by any
process, unless the law giving it validity is clear and unquestionable.

If this precedent is made and established, the result which may
come can hardly be estimated.    The small bill of $4.013 will
be only a premonition of future progress in the same direction.
Probably there is not a county in the State but has the same occasion
for its local officers to travel in foreign parts.    A district attorney
who accepted the views maintained by this decision would make an
expensive department for his county.    There may come a day
when an officer of less virtue and integrity of purpose than the

relator will secure the office, and who, under the cover of a chase for a fugitive from justice, may, at the expense of the county, take expensive travel, there being no limit to the line of pursuit.

It was well said by the learned justice at the Special Term that *" if his construction could be maintained, then it would not only be the privilege but the duty of the district attorney to follow a fugitive, charged with the commission of a felony, not only into another State, but to another continent, and his pursuit would only be limited by the extent of the extradition treaties between the United States and foreign countries."*

The proposition seems untenable, almost from its absurdity. If this bill can be enforced against the defendant, any district attorney may at the expense of his county, at his option, follow any fugitive who is indicted within his county to the uttermost parts of the earth. The right to enforce the bill against the county would not depend upon his success. The right to be reimbursed does not depend upon the success of the enterprise. In this case, if the relator had failed to capture his man, his claim to be reimbursed would be as good as now.

I conclude that the order of the Special Term ought to be affirmed, with costs.

Order sustaining demurrer reversed and judgment for relator on demurrer that peremptory *mandamus* issue as prayed for in writ, with costs below and on appeal.